79   283
102   321
₆102   322

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## HOPE v. NORFOLK AND WESTERN RAILROAD COMPANY.

### August 7, 1884.

RAILROADS—*Acquisition of Right of Way.*—C., in 1851, conveyed to N. & W. R. R. Co. "all right, title, interest and estate of, in and to so much of her land in W. county as may be laid out for the construction of its railroad," to-wit: a strip eighty feet wide and containing nine acres. Of said land C. was only tenant for life, with remainder in fee in H. In 1881 C. died. No steps were taken by said company to acquire said right of way, except taking conveyance from C. Within three years after C.'s death, H. brought unlawful detainer against said company for this land.

HELD:

    1. H. is entitled to judgment for the land.

    2. H.'s right of action did not accrue till C.'s death.

    3. Statute prescribes how such companies may have land condemned for their purposes; but if they proceed by negotiations *in pais* with the life tenant only, they can acquire only such life tenant's rights.

Error to judgment of the circuit court of Washington county, in an action of unlawful detainer brought therein by James C. Hope against the Norfolk and Western railroad company for the recovery of a strip of land in said county, eighty feet in width and containing nine acres, and the same upon which the company's railroad is located, the possession whereof was alleged to be unlawfully withheld by the said company from the plaintiff.

The agreed facts are substantially as follows: The defendant company is the successor of the Atlantic, Mississippi and Ohio

railroad company, which was the successor of the Virginia and Tennessee railroad company. In the year 1848 James Clark departed this life, leaving a will, by which he devised a certain tract of land in the county of Washington to Jane C. Clark, his wife, for life, remainder in fee to James C. Hope, the plaintiff in error. In 1851 Mrs. Clark, the widow, conveyed to the Virginia and Tennessee railroad company all her right, title and interest in so much of the land as might be necessary for the construction of its road through the same. The land so conveyed is the land now in controversy. Between the years 1851 and 1856 the company constructed its road through the land, and it and its successors have since remained in possession of the land in controversy. In the year 1881 the life-tenant died, less than three years before this suit was brought. No steps were ever taken to condemn the land, the only interest acquired being such as was conveyed by the deed of the life-tenant.

The defendant appeared and pleaded the general issue and also the act of limitations. And upon the facts agreed, the case having been submitted for determination to the court without a jury, judgment was rendered for the defendant, to which judgment a writ of error was awarded by one of the judges of this court.

*White & Buchanan*, for the plaintiff in error.

*Fulkerson & Page*, for the defendant in error.

1. The entry of the Virginia and Tennessee railroad company was lawful.

The statute provides that no company incorporated for a work of internal improvement shall construct its road through any land without the consent of the "owner or possessor." Code of 1849, chap. 56, § 4.

The same statute, section 6, provides, that if the company

cannot agree on the terms of purchase with "those entitled to lands wanted for the purposes of the company," five disinterested freeholders shall be appointed by the court to ascertain a just compensation for such land. And section 7 of said chapter provides, that notice of the application for appointment of commissioners shall be served upon the "tenant of the freehold."

What does the statute mean by the terms "owner or possessor," "those entitled to lands" and "tenant of the freehold," as used in these sections?

The term "owner," as used in section 4, means tenant of the freehold or tenant in possession appearing as the visible owner. 2 Rob. Rep. 241. Tenant of the freehold, as used in section 7, means tenant in possession appearing as the visible owner. 20 Gratt. 511–12. See also 26 Gratt. 661.

The terms "those entitled to lands," "owner," "proprietor" and "tenant of the freehold," as used in these statutes, we respectfully submit all bear the same meaning. Taking the context, do not the words "those entitled to lands," as used in section 6, necessarily refer to the person to whom notice of the application shall be given, if proceedings be instituted under section 7, that is to the tenant of the freehold.

Jane C. Clark was tenant of the freehold, and in possession of the land in controversy. The entry and construction of the road with her consent was lawful, and such being the case, the possession of defendant in error did not, at her death, change and become unlawful.

It was not necessary to institute legal proceedings for the condemnation of the land. The statute provides that such proceedings shall be taken if the corporation cannot agree with those entitled to lands wanted for the use of the company. In the case at bar there was such agreement, and the condemnation would have been a useless proceeding.

2. The entry having been lawful, the action of unlawful detainer does not lie. Ejectment (and likewise unlawful detainer) lies where the entry was unlawful. *McClinton* v. *P. Ft.*

*W. & C. R. W. Co.*, 4 Am. Law T. Rep. 43 ; Peirce on R. Rds. 167, 179, 230. But ejectment does not lie where the entry was lawful. The action of ejectment proceeds for the possession of the premises, claiming that they have been unlawfully entered and unjustly withheld, and facts which go to disprove these make a legal defence. 101 Ill. 402 ; 10 Am. & Eng. R. cases, 39, and cases cited. See also *Miss. & Tenn. R. R. Co.* v. *Devaney*, 2 Am. R. 608, in which it was held that where the entry was, in good faith, under the belief that it had title, the company was not a trespasser, though the title was, in fact, in another.

3. Ordinarily a life tenant cannot by any act encumber the estate of the remainder-man, but the proceedings by which lands are taken for public use, are, necessarily, extraordinary in their nature, and at variance with well established rules as to the rights of property. The condemnation of land for public use is an exercise of the right of eminent domain, by which the commonwealth, acting by its general assembly, resumes the title to lands needed for public use. This resumption of title takes place, in the case of land needed for a railroad, when the charter is granted, and when the charter is accepted by the company, and the land authorized to be taken and used for public purposes is ascertained by the actual survey and laying out of the road, the condemnation, as to the land so ascertained, is complete, and as between the company, after lawful entry, and the land owner, there is no question of title, and only the question of compensation for the land actually taken, and damages to the residue of the tract can arise.

We respectfully insist that the judgment of the circuit court should be affirmed.

LEWIS, P., after stating the facts, delivered the opinion of the court:

In Virginia, feudal tenures having been abolished by statute, lands are not held under the commonwealth, but in the language

of the act of 1779, all lands claimed in fee simple are held "in absolute and unconditional property." 10 Hen. Stats. 64; 2 Minor's Insts. (2d ed.) 61. The state, however, possesses the sovereign right of eminent domain, and the legislature has prescribed the manner in which the right may be exercised when land is wanted for works of internal improvement and other public purposes. But in the present case the company did not choose to proceed under the statute to condemn the land; it sought to acquire it by negotiations *in pais,* with the life tenant, and with her only. Her deed purports to convey nothing more than her own interest in the land conveyed, and the public records of the county showed that the fee was in another. No steps were taken to acquire the title of the remainderman, and as to him, therefore, the possession of the company has been unlawful since the determination of the life estate. The constitution (art. V, sec. 14) forbids the taking of private property for public uses without just compensation, and in this case no compensation whatever has been received by the plaintiff for his interest in the land in the defendant's possession. The statute is in harmony with the constitutional mandate, and requires that full compensation shall be made to those whose land is taken for public uses. It does not contemplate that proceedings under it will be instituted except in those cases in which the land wanted cannot be acquired by private treaty with those, and with all of those, who have an interest in it. Its language is as follows: " If the president and directors of a company incorporated for a work of internal improvement, the court of a county, or the council of a town, cannot agree on the terms of purchase with those entitled to lands wanted for the purposes of the company, county or town, five disinterested freeholders shall be appointed by the court of the county or corporation in which such land, or the greater part thereof, shall lie (any three of whom may act) for the purpose of ascertaining a just compensation for such land. When it is intended to apply for such appointment, ten days' previous notice thereof shall be

served on the tenant of the freehold, or his guardian or committee. But if there be no such tenant, guardian or committee, within the county or corporation, the notice instead of being thus served, may be published once a week for four weeks in some convenient paper, and posted at the door of the courthouse of the county or corporation on the first day of the term next preceding the application." Code 1873, chap. 56, secs. 6, 7. It is then further provided, that after the amount of compensation has been ascertained and reported by the commissioners, and their report has been confirmed, the sum so ascertained may be paid, not to the tenant of the freehold, if there be others interested, but to all the persons entitled thereto, or into court; and that thereupon the title to that part of the land, for which compensation is allowed, shall be absolutely vested in the company, county or town in fee simple. *Id.*, § 11. And in order to enable the court to properly dispose of the money so paid into court, it is authorized to direct inquiries to be made by a commissioner to ascertain what persons are entitled thereto, and in what proportions, after which it may make such disposition of the money as may seem to it right. *Id.*, § 16.

It will thus be seen that while in beginning proceedings under the statute, it is sufficient to give notice to the tenant of the freehold, which has been held to mean the tenant in possession appearing as the visible owner. (*Pitzer* v. *Williams*, 2 Rob. 241; *Supervisors of Culpeper* v. *Gorrell et als.*, 20 Gratt. 484, 511). A complete title to the land desired cannot be acquired *in pais* except by agreement with all the parties who are entitled thereto. And as that has not been done in the present case, the title of the plaintiff was not affected by the deed of the life-tenant, and consequently the defendant's possession is unlawful. See *McClinton* v. *P. Ft. W. & C. R. R. Co.*, 66 Penn. St. 404; *Daniels* v. *The C. & N. W. R. R. Co.*, 35 Iowa, 129; *S. C.*, 14 Amer. Rep. 490; 1 Redfield on the Law of Railways (5th edition), chapter 13, 364; Pierce on Railroads, 167; and cases cited.

It only remains to say that the plea of the statute of limitations cannot be sustained. The life-tenant died in 1881. It was not until then that the plaintiff's right of possession accrued, and the suit was brought within three years thereafter. *Ball* v. *Johnson,* 8 Gratt. 281; *Jackson* v. *Johnson,* 5 Cowen, 74; *S. C.,* 15 Amer. Decisions, 443.

Questions of inconvenience discussed by counsel cannot be considered. The fact is, that the defendant unlawfully withholds possession of the plaintiff's property, to which it has acquired no title, and for which he has received no compensation. It is competent, however, for the company, if it cannot acquire the land by private agreement, to condemn it, and thus it is hardly probable that public inconvenience will result from a reversal of the judgment complained of. But be that as it may, the plaintiff has shown himself entitled to recover, and the judgment must be reversed.

RICHARDSON, J., dissented.

JUDGMENT REVERSED.