### *RICHARD W. GORRILL ET AL. v. TOLEDO, FINDLAY & SPRING-FIELD RY. CO. ET AL.

Remainderman not Bound by Life Tenant's Deed.

Where a railway company, having obtained from the tenant for life a deed of quit-claim of premises over which it proposes to construct and operate a permanent line of railway, is about to enter upon the lands for that purpose, against the objection of the owner of the remainder in fee, and without making compensation to him, such proposed action on the part of the railway company may be enjoined at the suit of such owner, until compensation has been duly made.

* This case, in the supreme court, was dismissed by the parties April 18, 1893.

APPEAL from the Court of Common Pleas of Wood county.

SCRIBNER, J.

This is an action brought by the executors and heirs and devisees of William Gorrill, deceased, in which they seek to enjoin the defendant from constructing and operating a line of railway across certain lands described in the petition. The lands in question form part of a tract devised by said decedent to his widow for life, the estate so devised, however, to terminate in the event of her marriage; the remainder after the termination of the estate devised to the widow, to be sold by the executor, and the proceeds equally to be divided among the plaintiffs. Under this provision, the fee descended to the plaintiffs, who are the heirs, as well as the devisees of the testator, subject to be divested by execution of the power of sale conferred upon the executor. By the established doctrine of the courts of equity, if a sale be not necessary for the payment of debts or legacies, the devisees, being the heirs, may, if all concur, elect to take the land instead of the money into which the testator has directed it to be converted.

The defendant claims under a deed of quit-claim, executed to it by the widow, by which she attempted to convey to the company a strip of land 150 feet in width through the entire premises; and it is averred by the plaintiffs that the railroad company is about to construct, maintain and operate on and over the strip so conveyed, without compensation to the plaintiffs, and against their objection, its line of railroad, which is to be a continuous line, permanent in its character, extending from Toledo, Ohio, to the central part of the state. The company admits in substance the allegations of the petition, insisting that by the conveyance from the widow it has acquired the right to enter upon the premises in question, and there construct and operate its line of railway during the lifetime or widowhood of its grantor; denying that it will commit waste, or that it makes any claim to or proposes to make use of, the premises for any period beyond the duration of the estate vested in its grantor, the widow, under the will of her deceased husband. It disclaims any purpose to contest or question the right or title of the plaintiffs in and to the remainder, or in any manner to prejudice their rights.

The legal proposition involved, therefore, is this: May a tenant for life of real estate grant to a railway company a right of way across the lands so held; and may the company, under such grant, enter, construct and operate its line of railway thereon during the continuance of the life estate, against the objection of, and without making compensation to the remaindermen?

It is argued by counsel for the company that a tenant for life may, if no waste be committed, construct and operate a railway upon the premises held by such tenure; and it is insisted as a logical result of this proposition, that as a life tenant may confer upon another the right to make such lawful use of the premises as he himself might make, he may license a railway company to use any part of the premises, during the continuance of his estate, for railway purposes. This proposition appears plausible, but let us examine it and see if it be sound.

It may be conceded that a tenant for life may, for his own private purposes, convenience and profit, construct and operate on the premises held by him, railway tracks, provided always no waste be committed thereby. There may be upon the lands quarries of marble or stone, or mines of coal, which have been opened, and which the life tenant may be entitled to work; or there may be mills or factories, or other manufacturing establishments; and the successful prosecution of the business of mining or quarrying, or manufacturing, may be largely promoted by the use of tramways or railways upon the premises. It may be conceded further, that the life tenant may grant to another, or to a private corporation organized for the purpose of manufacturing, or quarrying stone or marble, or mining coal, the same right which he himself possesses in that regard. It will be observed, however, that all these are private enterprises in which the public has no direct concern. The public is not entitled to demand or compel the transportation of

passengers or freight. It has no control whatever of the business so carried on upon the premises. And even if we assume that the life tenant may carry passengers and freight upon his railway, or license another natural person to do so, the case is not analogous to the one presented here.

In the present case the grant by the life tenant is made to a railway corporation, created and organized under the laws of the state, and which may exist in perpetuity. This corporation is created for the purpose of providing a public use, and to that end is endowed with one of the attributes of sovereignty, namely, the right of eminent domain. It is subject to legislative regulation and control. The public has the right to demand, and may compel, the transportation over its line, of passengers and freight. It is bound, on the requisition of the general government, to carry and deliver the mails. In short, as before stated, a railway is a public use. In its construction it may become necessary to make excavations or to raise embankments of earth and masonry; to build bridges and culverts. The statute requires ditches and drains to be provided, the line of railway to be fenced, and many other things not necessary to be here enumerated. Let us suppose, however, that in the present case but little grading is required, and that for the convenient transaction of the business of the company it is only necessary to lay its tracks upon the lands in question. Will this make any difference in the application of the principle involved?

The theory of the defendant company is that the rights of the plaintiffs as the owners of the fee are in no degree impaired or put in jeopardy by the use, during the life tenancy, of the premises by the defendant for its general railroad purposes; that the moment the life estate terminates, the interest acquired by the company from the life tenant ceases and determines. If this be so, the plaintiffs may at once upon the termination of the life estate, proceed to take possession of their lands, and eject the company; they may prevent the passage of trains, whether passenger or freight, by all legitimate means. For, upon the doctrine claimed by the defense, as to the plaintiffs, the railroad company would then become a trespasser. The entry was without their consent, against their objection, without compensation to them; they were powerless, as it is insisted, to prevent it. Could the remaindermen, upon the entry of the defendant, have insisted upon immediate compensation? If they could, then it was in their power, and it was their right and duty, to interpose, as they have here interposed, to prevent the taking of their property until compensation should be duly made. If they could not, it follows, in our judgment, that they would be in no degree affected or prejudiced by any act of the company in entering upon the lands and placing thereon its line of railway, and operating the same. Bothe v. D. & M. R. R. Co., 37 O. S., 147; Railroad Co. v. Robbins, 35 O. S., 531; Hope v. Railroad Co., 79 Va., 283.

It seems to us that the position of the defense in this regard is untenable; that if the remaindermen stand by without objection, and permit the railroad company, under color of a grant from the life tenant, to enter and construct its line of railway, and continue its operation as a public use until the termination of the life estate, they cannot then bisect the railway by taking full possession of the lands occupied by the tracks of the company, and thereby interrupt travel and the transportation of freight. It would be strange, indeed, if any such power could be exercised, and the business of the company and the public be brought to a standstill until proceedings in condemnation could be instituted and concluded. Not only would the interests of the traveling public be seriously affected, but merchandise, perishable goods, live stock, and other freight would suffer almost incalculable injury from the delay.

Our statute providing for the condemnation of lands for railway purposes contemplates, and expressly requires, that all the parties in interest shall be made defendants to the proceeding. The petition for condemnation must contain a specific description of each parcel of property, interest or right, within the county, sought to be appropriated; the use to which it is to be applied; the necessity of the ap-

propriation; the name of the owner of each parcel, if known; if not known, a statement of that fact, and a statement of the names of all persons having or claiming an interest, legal or equitable, in the property, so far as the same can be ascertained. Then follow provisions for bringing in all these parties. If any of the persons interested be unknown, the method of giving notice is pointed out. By another section it is declared that the owner of each separate piece or parcel, right or interest, shall be entitled to a separate trial by jury. It is further provided that if there be a controversy among the parties as to who is entitled to the fund, the jury shall ascertain the amount and value of the entire estate; that the money shall be paid into court, and proceedings taken in the court of common pleas to settle and adjust among the parties their conflicting claims. Secs. 6416, 6419, 6422, 6442, 6443, Rev. Stat.

This legislation evidently contemplates that in obtaining private property for railroad uses, the railway company shall acquire the right and title of all persons having an interest therein. It would hardly be claimed that under this statute a proceeding might be instituted to condemn a life estate in lands leaving the fee outstanding. It may be fairly implied from the legislative requirement in this regard, and the nature of the use to which the property is to be subjected, that if the railway company do not proceed by condemnation, it shall nevertheless, obtain, as far as practicable, the full title to, and ownership of the property.

A case is reported in State v. Comrs., 39 O. S., 58, which, although not directly bearing upon this point, reflects some light upon the question here presented. It is the case of State v. Commissioners. There, a guardian had undertaken to convey to county commissioners for the public use a right of way through the land of his ward. It was held by the court that the guardian had no power to make such a conveyance; that the deed was void. And in discussing the question the court said:

"The claim that the guardian, having the management and possession of the real estate, may permit the county to enter upon the land to construct its road, and that this conveyance at least grants a license to the county, voidable only, is only another way of reaching the same difficulty. If the license could, under any circumstances, become irrevocable during the minority of the ward, the guardian had no more power to grant it than to grant the fee. If revocable, either by the guardian or the ward after arriving at full age, the county did not thereby obtain the right of way contemplated by the act, which must be a permanent right in the public to use the land for a highway."

Here is a plain declaration, by the supreme court that the estate to be acquired for highway purposes under the statute relating thereto, must be a permanent, not a temporary estate or interest. So here, the grant of extraordinary powers to a railway corporation by the legislative authority, is upon the condition, clearly implied, if not expressed, that the corporation will procure such permanent estate or interest in the lands upon which the railway is to be constructed and operated, as shall be commensurate with the objects and purposes of the grant; the acquisition of an interest which may terminate at any moment and result in subjecting the public and the commerce of the country to interruptions and the inconvenience and hazards of delay for an indefinite period of time is not a compliance with this requirement. Over and beyond the inquiry as to what a life tenant may do, lies the question of corporate power. See, also, State v. Railway Co., 40 O. S., 504; Currier v. Marietta R. R. Co., 11 O. S., 228.

In this connection it may be well to bear in mind that in this state a change in the line of a railway is rarely permitted after it has been once located. Secs. 3272, 3275-3278, Rev. Stat.; Stewart v. Railroad Co., 14 O., 353; Moorehead v. Railroad Co., 17 O., 340; Railroad Co. v. Naylor, 2 O. S., 235; Atkinson v. Railroad Co., 15 O. S., 21; Railway Co. v. Fisher, 39 O. S., 330.

Again: must the owner of the fee remain quiescent and permit his lands to be burdened with permanent railway structures and subjected daily and hourly to

the public use? If he may be compelled to await the termination of the life estate, in what condition is he placed with regard to his claim for damages? Is he to make his claim with reference to the situation of the property at the time the estate devolves upon him by reason of the death of the life tenant? If he is permitted to make his claim and demand compensation with reference to the date of the entry by the railway company, it might make a vast difference in the amount of compenation to which he would be entitled. If his right to compensation does not arise until the death of the life tenant, the value of the property might be largely depreciated by reason of the very fact that a line of railway had been constructed upon it. See Railroad Co. v. Goodwin, 111 Ill., 273. In the case of Wagner v. Railway Co., 38 O. S., 32, the right of a land owner to proceed by way of injunction to prevent the construction of a railway over his land until full compensation has been made, is thoroughly discussed and determined. Railway Co. v. Lawrence, 38 O. S., 41.

Upon the argument a number of cases were cited from other states, which we have examined. They appear to sustain, to some extent, the proposition insisted upon by the railway company. One of these is the case of Tutt v. Railroad Company, 16 So. Car., 365. That was an action of ejectment, by which a trustee holding the legal title to lands which had been conveyed to a railway company by a life tenant, sought to recover possession. The company had entered and constructed its road under the grant, and was in possession. The court held that as the life tenant was entitled to the possession of the premises during his life time, the trustee could neither maintain ejectment nor trespass against the company during the existence of the life estate. The court said, however, that inasmuch as the life tenant might himself construct and operate a line of railway upon the premises, he might confer that right upon a railroad corporation. See, also, Tompkins v. Railroad Co., 21 So. Car., 421. We are compelled to take a different view of the law as applicable under the legislation and policy of this state.

The case of Railroad Co. v. Goodwin, 111 Ill., 273, was a proceeding brought by a railroad company to condemn lands. The company had entered under a license from the tenant for life. It had constructed its railway, its embankments, its masonry, its bridges and other structures, at a large cost. The remaindermen had interposed no objection. When the life estate terminated, the company brought its proceeding to condemn. It was claimed by the owner of the fee, and held by the court below, that the owner was entitled to recover as a part of his compensation, not only the value of the land taken by the railway company, and damages for the injury worked to the abutting property, but also the value of the improvements which the company had put upon the land. The supreme court held, that the owner was not entitled to recover the value of these improvements.

The case of Bradley v. Railroad Co., 91 Mo., 493, was also an ejectment. There a husband had granted by deed to the railroad company a right of way across lands of his wife; the wife had signed and acknowledged the deed, but her name did not appear in the granting clause. The court held, that as to her the deed was inoperative. The company had entered under this grant, and constructed and maintained its railway until after the death of both husband and wife. Thereupon her children brought an ejectment against the company. The court held that the company had acquired the life estate of the husband as tenant by the curtesy in the premises, and was entitled thereunder to enter and construct and operate its line of railway; that the statute of limitations did not commence to run against the wife until after the death of the husband, when for the first time she was entitled to assert her claim to the property. It also declared, that during the lifetime of the husband, the wife was powerless to prevent the use of the land by the company for its railway purposes.

Another case, Austin v. Railroad Co., 45 Vt., 215, was decided mainly upon the peculiar provisions of the statutes of Vermont, applicable in such cases. The railway company was the owner in fee of an undivided moiety of the lands. It also

owned a life estate in the other undivided moiety.    Under this right and title it had entered upon the lands, constructed, and was operating its railroad.    An ejectment was brought in behalf of the owners of the fee of the undivided interest in which the company had a life estate.    The court held that under the circumstances of the case the action could not be maintained.    It further held that under the statutes of Vermont a railway company might enter upon and occupy lands without first making compensation to the owner, a period of two years after the entry being allowed for making such payment.

A Virginia case, Hope v. Railroad Co., 79 Va., 283, was also cited.    In that case a railroad company had entered under a grant from the tenant for life, had constructed its road, and operated it until the death of the tenant for life; thereupon the owner of the fee brought a proceeding in detainer to obtain possession of the premises occupied by the company, and recovered.    It seems to us, for the reason already stated, that the doctrine announced in this case should not be applied in Ohio.    We can not yield our assent to the doctrine that the owner of the fee may be compelled to await the termination of the life estate before demanding compensation; or that, if he stand by, and make no objection to the construction and use of the railway, he may, after the decease of the tenant for life, evict the company, and thereby break up in a measure its railway system greatly to the inconvenience and detriment of the public.    See Goodin v. Railroad Co., 18 O. S., 169; Hornback v. Railroad Co., 20 O. S., 81; Railroad Co. v. Robbins, 35 O. S., 531, 538; Platt v. Penna Co., 43 O. S., 228.    In none of the cases from other states above noticed had the owner of the fee attempted at any time to enjoin or otherwise prevent the company from entering upon and occupying the lands.

We conclude, therefore, that the plaintiffs are entitled to an injunction restraining the defendant railroad company from constructing and maintaining its line of railway across the lands described in the petition until compensation has been made to them.    But we do not think that the injunction should go so far as to prevent the use of adjoining lands for ordinary storage purposes; that is, for the receiving and depositing of freights.    For example, the railway company may condemn a strip of land for its line of railway in the manner required by the statute; and having done this, if adjoining property is held by a life tenant, we see no reason why it would not be legitimate for the company to obtain from the life tenant a right to use such land for the purpose of receiving, storing and delivering goods. The injunction, therefore, which we award, will be limited accordingly.    But we do not mean by this to authorize the company to lay side-tracks thereon which may become a part of its railway system.

Cook & Troup, for plaintiffs.

H. H. Dodge and R. S. Parker, for defendant.