judgment appealed from, upon the general proposition that the writing must contain the complete agreement of the parties so that every essential part thereof and the full intention of the parties can be gathered from it without resort to parol evidence. It is unnecessary to analyze these cases in detail because the rule referred to has long been settled law. No case, however, is cited upon the proposition that agreements required by the statute of frauds to be in writing are not to be construed like other agreements; on the contrary, there is late and controlling·authority upon the proposition that such contracts are subject to the ordinary rules of construction. Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260. Such contracts are to be construed with reference to the circumstances surrounding the parties (Hagan v. Domestic Sewing Machine Co., 9 Hun, 73), and trade terms may be explained by parol evidence (Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130). The two cases last cited supra are referred to with approval by Cullen, J., in Brauer v. Oceanic Steam Navigation Co., 178 N. Y. 339-345, 70 N. E. 863. The error of the learned referee resulted from confusing an essential element of the contract not expressed in the writing with an expression found therein requiring explanation. In the former case the missing element cannot be supplied by parol, but in the latter case the court will put itself in the position of the parties for the purpose of understanding the agreement made by them. The statute of frauds is satisfied if every element necessary to constitute a binding contract is put in writing. Suppose the parties had agreed, the one to sell and the other to buy, at the market prices obtaining, whenever the orders˙should be given, can it be doubted that the agreement would be good? If the parties can make such an agreement, the statute of frauds is satisfied when it is evidenced by a memorandum signed by the party to be charged. The fact that resort would have to be had to parol proof to determine the market prices would not affect the validity of the contract or the sufficiency of the writing, so that it embodied every essential element of the contract.

I think the judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the event. HOOKER and GAYNOR, JJ., concur. HIRSCHBERG, P. J., and RICH, J., vote to affirm upon the opinion of the referee.

---

(53 Misc. Rep. 133)

### MULLER v. MANHATTAN RY. CO. et al.

(Supreme Court, Special Term, New York County. February 6, 1907.)

1. REMAINDERS—RIGHT OF REMAINDERMAN TO ENJOIN INJURY TO INHERITANCE.

    Under 1 Rev. St. p. 750, pt. 2, c. 1, tit. 5, § 8, and Code Civ. Proc. § 1665, providing that a remainderman may sue for injury to the inheritance, though an estate for life or years intervenes, a remainderman could sue to restrain the maintenance and operation of an elevated railroad in front of the premises and for damages, though there was an intervening life estate and the life tenant could have recovered rental damages.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Remainders, § 13.]

2. LIMITATION OF ACTIONS—ACCRUAL OF RIGHT OF ACTION—PRESCRIPTIVE RIGHTS—ELEVATED RAILROADS.

    For the purpose of computing the running of the statute of limitations on an action to restrain the maintenance and operation of an elevated

railroad in front of premises, the cause of action accrued when the road was completed and operation begun.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 333.]

3. SAME—INFANT'S DISABILITY.

Under Code Civ. Proc. § 375, providing that the time an infant is under disability to maintain an action in relation to land after the accrual of the cause of action shall not be a part of the 20-year limitation for the commencement of such actions, except that the time so limited cannot be extended more than 10 years after the disability ceases, where the disability covered a period of less than 10 years, the person had 20 years after reaching her majority in which to sue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 390.]

4. EMINENT DOMAIN—ELEVATED ROAD—PARTITION—SALE—RIGHTS OF PURCHASER.

Where remaindermen could have enjoined the maintenance and operation of an elevated railroad in front of land which was afterward sold at partition sale, the purchaser acquired all their rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 789, 407–409.]

Action by Clemeno Muller against the Manhattan Railway Company and another. Judgment for plaintiff.

Peckham, Warner & Strong (Charles H. Strong, of counsel), for plaintiff.

Charles H. Gardiner (Sherrill Babcock, of counsel), for defendants.

GIEGERICH, J. This action was brought to restrain the defendants from maintaining or operating their elevated railroad in front of the plaintiff's premises, situate at No. 849 Third avenue, in the borough of Manhattan, New York City, and for fee and rental damages. The complaint is in the usual form in such cases, and the answer, among other things, sets up a prescriptive right to maintain and operate their railroad in front of the premises in suit by reason of an open, continuous, and hostile occupation as against the plaintiff and his predecessors in title for a period of more than 20 years before the commencement of the action. The construction of the elevated railroad in front of the premises in suit was begun and completed by the New York Elevated Railroad Company in 1878, and operation was commenced thereon on December 30, 1878, and has been continued to the present time. The New York Elevated Railroad Company subsequently made and executed a lease of its railroad to the defendant Manhattan Railway Company. In 1878 the New York Elevated Railroad Company entered upon and took possession of Third avenue, in front of and adjoining the premises in question, for the purpose of constructing and operating their elevated railroad, and upon completion thereof commenced the operation of the railroad in front of the said premises on the 30th day of December, 1878. Prior to the commencement of this action the New York Elevated Railroad Company and the defendants, under claim of right adverse to the plaintiff and his predecessors in title, and exclusive of every other right, have been in possession of Third avenue in so far as the same is and has been required for the purposes of such railroad. Since such completion the

said elevated railroad has been continuously maintained and operated by various companies as follows: By the New York Elevated Railroad Company until June 8, 1891, by the defendant Manhattan Railway Company from the latter date until April 3, 1903, and since last mentioned date to the time of the trial by the defendant Interborough Rapid Transit Company; and said railroad was so constructed, maintained, and operated under a claim of lawful authority and right to construct and operate the same. The said railroad, during the period aforesaid, has been continuously maintained and operated by means of such possession and user, and that such entry, possession, maintenance, and operation have been open and notorious and under a claim of right adverse to the plaintiff and his predecessors in title and exclusive of every other right. The defendants' structures in front of the plaintiff's premises, consisting of two tracks with longitudinal and cross girders and their appurtenances, were erected in 1878, and have been continuously and uninterruptedly maintained and trains operated thereon since the 30th day of December, 1878, down to the date of the trial, and such elevated railway structure is a permanent structure, and the intention is to operate it permanently. It further appears from the evidence that by reason of the maintenance and operation of the defendants' elevated railway structure and trains the easements of light, air, and access of the plaintiff have been appropriated. These facts are relied on by the defendants to support their claim to title by prescription.

The doctrine of prescription and the reasons underlying the same are fully discussed in Scallon v. Man. Ry., 185 N. Y. 359, 363, 78 N. E. 284, 285, where the court say:

"Adverse possession and prescription are closely related. The one is regulated by statute and the other by common law, which has adopted 20 years as the prescriptive period from analogy to the statute of limitations. Code Civ. Proc. §§ 369, 371; Lewis v. N. Y. & H. R. R., 162 N. Y. 202, 223, 56 N. E. 540. Adverse possession is the open and hostile possession of land under claim of title to the exclusion of the true owner, which, if continued for 20 years, ripens into an actual title. Baker v. Oakwood, 123 N. Y. 16, 25 N. E. 312, 10 L. R. A. 387. Prescription rests upon the presumption of a grant of incorporeal rights that has become lost, and after the lapse of 20 years the presumption ripens into a title also. It is measured by user, and the adverse use must commence the same way, continue for the same period, and be of the same character as the adverse possession required to give title to real estate. Lewis Case, 162 N. Y. 224, 56 N. E. 540. The close connection between the two methods of acquiring property makes it reasonable and natural to extend the analogy to the subject of disability."

The plaintiff claims that the statute does not apply, because, when the cause of action first accrued, the persons then entitled to the remainder in fee were infants. The premises in suit were bought by one John Lang in April, 1868. He died on January 30, 1875, leaving a will by which he devised the premises in suit to his widow, Caroline, "to be used and enjoyed by her during the term of her natural life or widowhood." This was in lieu of dower. "And from and immediately after her decease, or after her remarrying again, I give, bequeath and devise the same to my children or their descendants, to be divided equally between them, share and share alike, the descendants of any deceased child or children taking the share such deceased child or

children would have taken if living." He left, him surviving, his widow and the following named six children, who were born as follows: Fredericka, August 20, 1860; Caroline, July 17, 1864; Joseph G., June 30, 1866; Charles, September 14, 1868; William, October 18, 1870; and John, December, 1874. Charles died in 1897, William in 1901, and John in 1875. The widow married one John Andre on June 27, 1888, and the plaintiff acquired title upon a sale had under a judgment in an action for partition on June 8, 1891. It will thus be seen that when the elevated road was first operated in front of the premises in controversy, viz., on December 30, 1878, the widow was entitled to an estate in the premises until her death or remarriage, and the question arises whether such intervening estate would have prevented the bringing of an action by the remaindermen. The statute then in force provided that:

"A person, seised of an estate in remainder or reversion, may maintain an action of waste or trespass for an injury done to the inheritance, notwithstanding an intervening estate for life or years." 1 Rev. St. (1st Ed.) p. 750, pt. 2, c. 1, tit. 5, § 8.

Section 1665 of the Code of Civil Procedure, which superseded such statutory provision, provides that:

"A person, seised of an estate in remainder or reversion, may maintain an action founded upon an injury done to the inheritance, notwithstanding an intervening estate for life or years."

There was thus, at the time of the invasion of the remaindermen's incorporeal right, and there has been ever since, express legislative authority for the maintenance of an action by a remainderman for injury to the inheritance. Further authority for such an action is furnished by the case of Thompson v. Man. Ry., 130 N. Y. 360, 29 N. E. 264, where similar relief was sought, and it was held that the maintenance and operation of the elevated railroad was a continuing trespass upon the rights of the remaindermen, and such trespass was an injury to the inheritance, and that the action could be maintained notwithstanding an intervening estate for life. The right of an infant remainderman to bring an action similar to this by a guardian ad litem was expressly sanctioned in the more recent case of Walsh v. Brooklyn Union El. R. R., 69 App. Div. 389, 74 N. Y. Supp. 1019. Since the remaindermen had the right to maintain the action when the defendants' predecessor began to operate its railroad in front of the premises in question, it is evident that the doctrine of the case of Scallon v. Man. Ry., supra, relied on by the defendant, is not applicable to the case at bar. There the statute had begun to run against the ancestor when the cause of action first accrued, and it was held that the supervening disability of the plaintiffs by reason of their infancy could not operate to defeat the defendant's claim to title by prescription. As was said by the court in that case (pages 363, 364, of 185 N. Y., page 285 of 78 N. E.):

"If infancy exists when the cause of action first accrues, the time for commencing the action is extended for a certain period after the infant becomes of age. If, on the other hand, the statute has already begun to run against the ancestor, it is not interrupted by his death and the supervening disability

of his infant heirs. An adverse possession commencing in the lifetime of the ancestor will continue to run against the heir, although he is an infant when his right accrues."

While the widow might have maintained an action to recover rental damages (Knapp v. N. Y. El. R. R., 4 Misc. Rep. 408, 24 N. Y. Supp. 324), such right, as above shown, did not prevent the infant remaindermen from maintaining an action to restrain the maintenance and operation of the railroad and for damages. Thompson v. Man. Ry., supra. See, also, Kernochan v. N. Y. El. R. R., 128 N. Y. 559, 29 N. E. 65; Id., 161 N. Y. 339, 55 N. E. 906; Winthrop v. Man. Ry., 17 App. Div. 509, 45 N. Y. Supp. 515. The right of the infant remaindermen to maintain the action is therefore abundantly established.

The next question is: When did such cause of action first accrue? The answer is found in the Scallon Case, which fixes the time when the defendants completed their elevated railroad and began to operate it as the time when an action could be commenced. The evidence shows that the defendants' predecessor in interest first began to operate its railroad in front of the premises in suit on December 30, 1878, and, applying the ruling in the Scallon Case, it must be held that the right of the remainderman to maintain an action of this character first accrued on the date last mentioned. It is urged by the defendant, however, that the claim of Fredericka Lang and her successors in title is barred by limitation, and in support of such contention it is argued that an infant has only 20 years in which to bring his action, and as much more as is necessary to give him 10 full years in which to bring the action after becoming of age. Section 375 of the Code of Civil Procedure provides that:

"If a person who might maintain an action to recover real property or the possession thereof, or make an entry, or interpose a defense or counterclaim, founded on the title to real property, or to rents or services out of the same, is, when his title first descends or his cause of action or right of entry first accrues, either (1) within the age of 21 years, or (2) insane, or (3) imprisoned on a criminal charge or in execution upon conviction of a criminal offense for a term less than for life. The time of such a disability is not a part of the time, limited in this title, for commencing the action or making the entry or interposing the defense or counterclaim, except that the time so limited cannot be extended more than ten years after the disability ceases or after the death of the person so disabled."

The Court of Appeals, in Howell v. Leavitt, 95 N. Y. 617, in construing this section, passed upon a question precisely similar to the case here involved. There it was contended that the statute of limitations had barred the right of one Louise M. Howell. She became of age on December 31, 1864. The person claiming title as owner, one Roberts, got possession on March 15, 1858, under a writ of assistance issued in a foreclosure suit in which he had been the purchaser. The action in the Howell Case was begun on November 7, 1878. The court, in holding adversely to the contention that the plaintiff's right was barred, said (page 622):

"The effect of this contention would be to cut down the 20 years' limitation to a little over 16 years by reason of a disability of infancy. In a case where the cause of action accrued to an infant 20 years of age the limitation would be cut down to 11 years, and that which was intended for the relief and ben-

efit of a person under disability is made to operate as a positive injury. We have already declined to adopt that construction. Acker v. Acker, 16 Hun, 174, 81 N. Y. 143. The exception of the Code relates to the extension of the time limited, and puts restraint only upon that extension. It means that the disability shall not add more than 10 years to the time limited after the disability has ended. Practically, in the case of infancy, it makes the extreme possible limitation a period of 31 years."

The principle of that case was expressly recognized and affirmed in Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637, and in the more recent case of Sanders v. Riedinger, 30 App. Div. 277, 51 N. Y. Supp. 937. Applying the doctrine of these cases to the present case, it is clear that the right of neither of the remaindermen has been barred. When the operation of the elevated railroad in front of the premises was begun on December 30, 1878, Fredericka was an infant of the age of 18 years. Under the authority of the cases cited she had 20 years after she became of age on August 20, 1881, to commence suit, as this would not result in an extension of more than the 10 years permitted by the statute. The action was begun on February 21, 1899, and was therefore brought in season. The same result follows in the case of the shares of the other infant remaindermen who, as seen above, were all younger than their sister Fredericka. The plaintiff, as the purchaser at the partition sale, succeeded to all the rights of the remaindermen and stands in their shoes. Pappenheim v. Met. El. R. R., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486.

I have passed upon the requests to find submitted by each of the parties litigant, as indicated upon the margin thereof, and from the facts found I am of the opinion that the plaintiff is entitled to judgment, including injunctive relief, with costs, and an extra allowance of $80, with rental damages at the rate of $96 per annum and $1,600 fee damage. The papers have been left with the clerk, in order that an engrossed copy of the complete decision may be made and submitted for signature.