A. E. GATES, Appellee, v. COLFAX NORTHERN RAILWAY COMPANY et al., Appellants.

**EMINENT DOMAIN:** Compensation—Refusal to Pay—Procedure—
1 **Injunction.** An injunction to restrain the occupation of land taken under the power of eminent domain until an award of damages has been paid, is the proper procedure to meet a refusal to pay the award.

**RAILROADS:** Right of Way—Nature of Right—Easement(?) or
2 **Fee(?).** A railroad right of way constitutes an easement only, whether acquired under condemnation proceedings or by private grant. Therefore, when such right of way is claimed under long continued possession, such possession is governed by the Adverse Possession Act, Section 3004, Code, 1897, providing that *use* of an easement is not competent evidence to establish a *claim of right.*

**ADVERSE POSSESSION:** Nature and Requisites—Applicability of
3 **Statute—Pleading.** The Adverse Possession Act, Section 3004, Code, 1897, providing that *adverse* possession of an easement shall be proven (a) by evidence separate and distinct from the *use* of the easement, and (b) by evidence that the one against whom the claim is made had express notice thereof, applies whether such issue is raised by the petition or by the defendant's cross-petition.

**ADVERSE POSSESSION:** Claim of Right—Express Notice—Use as
4 **Evidence.** Title by adverse possession to an easement in real estate is established only:

(a) By proof of 10 years' continuous and exclusive possession;

(b) By evidence, other than the use of the premises, that said possession was under a hostile claim of right or color of title;

(c) By proof that the one against whom the title is claimed had express notice of such claim of right.

ADVERSE POSSESSION: Claim of Right—"Use" as Evidence—Competency. The act of exclusively appropriating a strip of ground, the act of constructing railway tracks thereon, and the act of operating trains thereover, constitute, in their last analysis, simply a *use* of an easement, and, at best, only *constructive* notice of a claim of right; and, therefore, such acts (a) are not competent evidence that the party so appropriating and using "claimed the easement as his right," and (b) do not satisfy the statutory requirement of express notice of claim of right. (Section 3004, Code, 1897.)

ADVERSE POSSESSION: Color of Title—Conveyance by Adverse Claimant—Effect. The grantee of an adverse claimant's interest in an easement in real estate may not, under such conveyance, claim any higher or other right than that of an adverse claimant.

ADVERSE POSSESSION: When Possession Adverse—Life Tenants and Remaindermen. A rightful possession of land, acquired under an arrangement with the life tenant and in subordination to his title, but continued after the death of such life tenant, does not become adverse as to the remainderman until such time as the remainderman has been given express notice that such possessor is holding said land adversely.

EMINENT DOMAIN: Condemnation—Limitation of Actions. One who takes possession of a right of way without condemnation or payment of damages is a trespasser, and may not plead the statute of limitations against a proceeding to assess such damages and to enjoin the possessor until same are paid.

*Appeal from Jasper District Court.*—JOHN F. TALBOTT, Judge.

SATURDAY, SEPTEMBER 30, 1916.

ACTION in equity. Plaintiff, about December 11th, 1913, requested defendants to compensate plaintiff for damages, as plaintiff alleges, because of defendants' appropriation for railroad purposes, in the transportation of their coal, of a right of way through lands of which plaintiff claimed to be

the owner. Such compensation not being made, plaintiff alleges that he, on January 10, 1914, made application to the sheriff of Jasper County for the appointment of commissioners to assess his resulting damages, and that, on January 21, 1914, said commissioners assessed said damages at $3,000; this award of damages was filed in the office of said sheriff on the same day; and this action is to enjoin defendants' use of said right of way until payment be made of the damages so assessed.

The trial court found for plaintiff on the issues, and entered a decree enjoining defendants from operating a railway upon the land in question, unless and until they should pay plaintiff the damages assessed, with interest. Defendants appeal.—*Affirmed.*

*R. & F. G. Ryan,* for appellants.

*C. O. McLain* and *Tim J. Campbell,* for appellee.

PRESTON, J.—The issues were substantially these:

In his petition, plaintiff alleges he is the owner in fee simple of the southwest quarter and the north half of the southeast quarter of Section 11, Township 79 north, Range 21 west of the 5th P. M.; that defendants constructed and are maintaining and operating a railroad line over said premises, solely for the transportation of defendants' coal, without plaintiff's consent and without payment or compensation for damages; that the proceedings ended with the filing by commissioners of an award of damages, as above described; and that defendants have wholly failed and neglected to pay said award or any other sum. The answer and cross-petition of defendants admit that each defendant is a corporation. By way of cross-petition, the defendants allege that the Jasper County Coal Company constructed, owned, maintained, and, as owner, was in the undisputed possession of, and operated the sole and only railway on and across the property in question for many years previous to February 4, 1902, and,

up to that date, was in the full, open, adverse and uninterrupted possession of said railroad, and was the owner thereof; and that, on said fourth day of February, 1902, said Jasper County Coal Company conveyed to the defendant Colfax Consolidated Coal Company, under its said conditions of ownership and possession, the railroad line above described and referred to; that the deed was acknowledged and recorded on April 10, 1902; that, on February 4th, 1902, the defendant Colfax Consolidated Coal Company went into possession of said line of railroad under said deed, and has, ever since that date, under color of title and claim of right, been in the open, continuous, adverse, actual, visible and exclusive possession of said line of railroad, by itself and its tenants, until the present time, and is now in such possession; that, since November 1, 1904, the defendants Colfax Northern Railway Company and Colfax Northern Railroad Company, which were the lessees of Colfax Consolidated Coal Company, defendant herein, under and by virtue of the requirements of the leases made to them by the defendant Colfax Consolidated Coal Company, as lessor, have paid all taxes on said line of railroad; that, prior to said November 1, 1904, and after February 4, 1902, said Colfax Consolidated Coal Company operated said line of railroad and paid all the taxes which were assessed thereon as railroad property.

Defendants pray that the defendant Colfax Consolidated Coal Company be adjudged and decreed to be the absolute owner of the said railroad line on and across the land, and that plaintiff be barred of any right, title or interest in, or with respect to, said line of railroad and every part thereof, and for general equitable relief.

For reply and answer to cross-petition, plaintiff says:

1.  That he denies each and every allegation therein contained, not hereinafter specifically admitted.

2.  That the plaintiff acquired title to said land by and through the will of his grandfather, E. N. Gates, long since deceased, and the codicils thereto, which were duly admitted

to probate by the district court of Jasper County, Iowa, and are of record; that plaintiff's grandfather owned said land at his death, and said will and codicils thereto gave said land to plaintiff's father, Alvin C. Gates, for and during his life, a life estate only, and, upon the decease of plaintiff's father, said will and codicils gave said land to the plaintiff; that one John C. Wirth (or Worth) acquired the interest of plaintiff's father in and to said land on or about the 19th day of November, 1888, and owned said interest and possessed said land until the death of plaintiff's father, which took place about August, 1913; that, upon the death of plaintiff's father, as aforesaid, plaintiff became entitled to the possession and use of said land for the first time, to wit, about August, 1913, and he and his grantee have been in possession thereof since said time.

3. That said railroad was built about the year 1897, from Colfax to a coal mine or shaft about a half a mile south of said land; that at said time said John G. Wirth was in exclusive possession of said land, and that, since the plaintiff has become entitled to possession thereof, said railroad has been maintained and operated by the defendants in violation of plaintiff's rights and against his will.

4. That the Colfax Northern Railway Company, defendant herein, was incorporated in June, 1912, and has operated said railroad since that time only.

5. That the sole purpose of the original construction and subsequent operation of said railroad was to assist in the mining and marketing of coal, and it has been used exclusively for said purposes; that it was not originally of a permanent character nor likely to continue for any certain length of time; and that the plaintiff had had no knowledge or notice of the occupancy of said land by said railroad until about the year 1910, nor any knowledge or notice at any time prior to the death of said Alvin C. Gates that the defendants or their predecessors, or their alleged grantors or assignors, claimed any right in or upon said land by adverse possession;

that the defendants have, as a matter of fact, no right, title or interest in, to, or upon, said land; and that the facts stated in defendants' answer and cross-petition do not entitle the defendants to the relief demanded, and are not sufficient to constitute a defense or counterclaim.

By an amendment to their answer, defendants alleged that plaintiff entered into a written contract with one Joseph S. Dodd and executed a deed to him to the land in question, and that, after the date thereof, Dodd alone has any right to the damages claimed by plaintiff. Dodd filed a petition of intervention, consenting that the damages be paid to plaintiff, and stating that he never claimed any interest in the right of action against defendants with reference to the right of way of said corporations over the land in question. The contract referred to is dated September 17, 1913, and by it plaintiff agreed to sell the land to Dodd, and the deed executed pursuant thereto was executed February 28, 1914. In this deed, plaintiff, the grantor, reserves a right of action against defendants with reference to said right of way. As stated, the trial court found for plaintiff, and defendants seem to make no contention, at this time, in regard to the Dodd contract and deed. There was an agreed statement of facts, which, condensed, is substantially as follows:

1. E. N. Gates died in 1883. He was then the owner and in possession of the lands above described by government subdivisions.

2. By his will, E. N. Gates devised a life estate in said lands to his son, Alvin C. Gates. Plaintiff, the son of Alvin C. Gates, was, by said will, devised the said lands subject to said life estate.

3. Plaintiff was born December 23, 1890.

4. Alvin C. Gates died August 15, 1913.

5. Plaintiff, on December 11, 1913, requested compensation for defendants' occupation of a railroad right of way across said lands. This was his first assertion of rights in said lands adverse to defendants, and was followed up by

condemnation proceedings begun on January 10, 1914, culminating in findings by a sheriff's jury filed on January 21, 1914. Defendants have always denied and refused compensation to plaintiff. This action was begun January 22, 1914.

6. The railroad line of which plaintiff complains was built by the Jasper County Coal Company, a corporation, in 1897, and was operated by said Jasper County Coal Company as its property. Possession of the railroad line was unquestioned until after the Jasper County Coal Company made its deed to the Colfax Consolidated Coal Company, hereinafter referred to.

7. On February 4, 1902, the Jasper County Coal Company executed a deed to Colfax Consolidated Coal Company, which deed, on April 10, 1902, was filed for record in the office of the recorder of deeds of Jasper County, Iowa, and is recorded in the records of said office. The consideration recited in this deed was the payment of $15,000 and other good and valuable consideration. The description of the railroad line by said deed conveyed, which crosses the above lands, is as follows:

"The railway of the Jasper County Coal Company as now laid from the Chicago, Rock Island and Pacific Railway in the town of Colfax, Jasper County, Iowa, and extending therefrom in a southerly and then easterly direction to the east line of W½ of Section 13, Township 79, Range 21 W. 5th P. M., Iowa, together with all the right of way and roadbed of said road; all turnouts, sidetracks, switches and stubtrack or tracks of whatever kind, nature or description, including all tracks, ties, iron, steel rails upon said roadbed, turnouts, switches, including the tracks to the mines of said Jasper County Coal Company. The intention of this deed is to convey to the Colfax Consolidated Coal Company all the railroad property of the grantor herein, of whatever kind or description, lying or being in Washington and Mound Prairie Townships, Jasper County, Iowa, whether expressly named and described herein or not, and if, by any mistake or omis-

sion in description, all such railroad property belonging to first party is not herein accurately described, nevertheless the first party's interest in such railroad property shall pass to said second party. To have and to hold the said property above described with all appurtenances thereto belonging unto the said second party, its successors and assigns forever, the said first party covenants for itself and its successors that the foregoing described property is free from any incumbrance, that first party has full right, authority and power to sell the same and it hereby warrants to defend the title unto said second party, its successors and assigns, against all lawful claims of all persons whomsoever claiming the same, or any part thereof; this warranty, however, shall not apply to or include any track privilege on or over the right of way of the Chicago, Rock Island & Pacific Railway or its tracks. This conveyance is executed in accordance with the request of the stockholders of the first party, authorizing its board of directors to sell and convey the aforesaid property, and in accordance with the resolution of the board of directors authorizing such sale and directing the president and secretary of said company to execute a conveyance therefor, and in accordance with such authority, the said president and secretary of the first party execute this instrument in behalf of the first party on the date first hereinabove written.''

Said deed was duly acknowledged.

8. Immediately after the execution of said deed from Jasper County Coal Company, the Colfax Consolidated Coal Company went into possession of said line of railroad, there being no interim between the possession of said Colfax Consolidated Coal Company and its grantor; and said Colfax Consolidated Coal Company, since taking possession, as aforesaid, without question or interruption, continued such possession until December 11, 1913, and the possession and operation of said line has been continuous by itself or its lessees, one of whom is its codefendant herein, until this present time. All taxes on said railroad line have been paid from February

10, 1902, until this time, either by the Colfax Consolidated Coal Company or its lessees or its grantor, the Jasper County Coal Company. On December 11, 1913, there was for the first time questioned the possession of said line of railroad in the manner described in plaintiff's petition.

9.   Said railroad was constructed across said land and is being maintained and operated across said land by the defendants, without consent of the plaintiff (or objection of the plaintiff prior to about December 11, 1913), and without any compensation or damages' having been paid to plaintiff therefor (or demanded by plaintiff prior to about December 11, 1913).

10.   One John G. Worth (or Wirth) acquired the interest of plaintiff's father (the life tenant) in and to said land on or about the 19th day of November, 1888, and owned said interest. He possessed said land (except the portion covered by said railroad line after the construction of said railroad) until the death of plaintiff's father, which took place about August 15, 1913, and plaintiff and his grantee have been in possession of said land since about August 15, 1913, except the portion thereof occupied by the defendants herein by reason of their railroad line, as herein otherwise described.

11.   At the time said railroad was built, in the year 1897, it extended from Colfax southward only to a coal mine or shaft about half a mile south of said land (said shaft being about one mile from said town of Colfax). Up to said time, John G. Wirth was in the sole possession of plaintiff's father's interest in said land. The main purpose of the original construction and subsequent operation of said railroad and the extensions thereof was to assist in the mining and marketing of coal, and it has been used for said purposes. The aforesaid coal shaft was known as "No. 5." Mining operations were continued at said place for about four years only, when the deposit of coal became exhausted. At about the time of the cessation of mining operations at said shaft, another deposit of coal was discovered about three fourths of a mile east

of .said shaft, and another shaft was there sunken, known as "No. 6." Mining operations were continued at "No. 6" for about six or eight years; then the deposit of coal at said place became exhausted. The next shaft operated was "No. 7." Originally, this shaft was opened, and from it to an intersection with the line which had been built as above described, there was built a railroad line. The opening of said shaft "No. 7" and the building of said intersecting line were by the Colfax Coal & Mining Company, a corporation entirely separate and distinct from defendants and each of defendants' predecessors. The said Colfax Coal & Mining Company leased to the aforesaid Jasper County Coal Company the track built by the said Colfax Coal & Mining Company, the date of said lease being May 29, 1901. It was about two miles in length. At some time between May 29, 1901, and April 30, 1902, there was organized the Colfax Consolidated Coal Company, one of the defendants herein, and between said dates there were conveyed to it the shafts and railroad lines of the Jasper County Coal Company and the Colfax Coal & Mining Company, and it was by these conveyances that the Colfax Consolidated Coal Company claimed to be the owner of said property, including said railroad lines. In the year 1905, the defendant Colfax Consolidated Coal Company opened shaft "No. 8," about three miles southeast of the south line of the tract described in the will of E. N. Gates, above referred to. The operation of shaft "No. 8" is now going on, and is likely to continue for several years. The operation of "No. 7" was discontinued in the summer of 1913. "No. 7" and "No. 8" are only a fraction of a mile apart.

In the summer of 1912, there was opened by the Colfax Consolidated Coal Company a shaft or coal mine known as "No. 9," located about a mile from "No. 8" in a southwesterly direction. To reach said "No. 9" shaft, a line of railroad about a half mile in length was built by the Colfax Consolidated Coal Company from its point of intersection with the railroad line which had been previously built, and

which was being then operated by said Colfax Consolidated Coal Company. Said shaft "No. 9" has been and now is in operation ever since it was opened, as is also the railroad line to said shaft.

12. Plaintiff had no knowledge or notice of the occupancy of said land by said railroad through it, except such constructive notice as the facts herein stipulated impart, until about the year 1910, nor any other knowledge or notice, at any time prior to the death of said Alvin C. Gates, that the defendants or their alleged predecessors or their alleged grantors or assignors claimed any right in or upon said land by adverse possession.

13. The Colfax Northern Railroad Company was organized as a corporation and filed its articles of incorporation April 6, 1901, and, under lease from the Colfax Consolidated Coal Company, operated the line of railroad through the land described in the will of E. N. Gates from the first day of September, 1904, until in June, 1912, from which time it has been operated by the Colfax Northern Railway Company, one of the defendants herein.

14. Joseph S. Dodd did not come into possession of any of said land until March 1, 1914, at which time he took possession under his deed and still retains the same.

15. During the entire time, there has been a railroad line through the southwest quarter and north half of the southeast quarter of Section 11, Township 79, Range 21, in Jasper County, Iowa. The corporations which have operated the same have, as a continuation of said line, operated a railroad line to Valeria, a station of the Chicago, Great Western Railroad about five miles northwest from Colfax, and at Colfax have maintained a station, yards, and a roundhouse, through which yards trains have been operated from Valeria to the southern termini above described, during said entire time, as one system, and said line has, during all said time, been connected with, and has interchanged freight traffic

with, the Chicago, Rock Island & Pacific Railroad at Colfax, Iowa.  -

16. No person now has or claims any right, title or interest whatever in said real estate (S. W.¼ and N.½ S. ·E.¼ Sec. 11, Twp. 79 north, Rg. 21 west of 5th P. M.), except the parties hereto, and said Dodd, under his deed from plaintiff.

It was further stipulated that either party might introduce evidence upon the trial which did not contradict the facts agreed upon as established. In addition to the foregoing facts shown by the stipulation, plaintiff offered in evidence the following matters:

Exhibit A, being a stipulation of facts, is offered in evidence by both parties, with the understanding on the part of the plaintiff that the consideration of the use of the right of way in question, under Section 3004 of the Code, is not evidence of a claim of right to an easement and not evidence of a foundation of adverse possession.

Plaintiff also objects to that part of the stipulation which shows that the Colfax Northern Railway Company is merely lessee of the Colfax Consolidated Coal Company, as immaterial.

Exhibit B is offered in evidence by the plaintiff,—same being a letter from the general manager of the Colfax Consolidated Coal Company,—with this explanation, that the letter is an answer to a letter which plaintiff's counsel wrote to the general manager with reference to the subject-matter of this action, and also to a conversation had between them in which they talked about the subject-matter of this suit, and refers to the payment on May 11, 1898, by one of the claimed predecessors of the Colfax Consolidated Coal Company, of an amount of money to J. G. Worth, referred to in the stipulation as owner of the life estate of A. C. Gates, under a certain deed, as therein shown.

This explanation of plaintiff's counsel is to be received as evidence in connection with the letter.

Plaintiff offers in evidence the files in this case, including the petition and the original notice, showing that this case was commenced by service of the original notice on the 21st day of January, 1914, and that the petition was filed on the 22nd day of January, 1914. "Exhibit B," offered as evidence, is as follows:

> "Colfax Consolidated Co.
>
> "Colfax, Iowa. Jan. 9, 1914.
>
> "Mr. Tim J. Campbell, Atty., Newton, Iowa.
>
> "Dear Sir: Your favor of Jan. 6, 1914, at hand. We find that the right of way you refer to was paid for May 11th, 1898.
>
> "Yours very truly,
>
> "J. B. Ryan, General Manager."

As we understand the record, it is not claimed by defendants that plaintiff has ever been paid anything for the right of way across the land in question.

1. It is suggested by appellants, rather than argued, that an action at law would have been more appropriate; but under the authority of *Hibbs v. Chicago & S. W. R. Co.*, 39 Iowa 340, an action for injunction to restrain defendant from operating its road over the land condemned, until the damages awarded had been paid, is the proper remedy, and that case holds that the same rule applies to the lessee as to the lessor of the railroad. See also *Conger v. Burlington & S. W. R. Co.*, 41 Iowa 419. We do not find that these cases have ever been overruled or even criticized.

1. EMINENT DOMAIN: compensation: refusal to pay: procedure: injunction.

2. It is thought by appellees that Section 3004, Code, 1897, applies to the situation here presented. The appellants contend otherwise, and argue, first, that the statute does not apply because they have more than a mere easement in the land, and they claim they have a fee title to the strip. Appellants' argument is that plaintiff's right to payment

2. RAILROADS: right of way: nature of right: easement(?) or fee(?).

of $3,000 is alleged to be founded on Chapter 4, Title X, of the Code, which authorizes the taking of real estate. They say that Section 1995, Code Supp., 1913, excludes the idea that this is a mere easement. That section provides:

"The land so taken, otherwise than by the consent of the owners, shall not exceed one hundred feet in width, except for wood and water stations, unless where greater width is necessary for excavation," etc.

Section 1999, Code, 1897, requires freeholders to "inspect said real estate, and assess the damages which said owner will sustain by the appropriation of his land for the use of said corporation."

They say that the assessment which plaintiff procured to be made under said section was of damage to his real estate by the appropriation thereof, which was originally in 1897, when the road was built; that plaintiff, having availed himself of these provisions, is in no position to assert that he caused damages to be assessed because of the existence of a mere easement. Appellee argues that this issue was not raised in the pleadings, but contends that, even if it had been, under the authorities, only an easement could have been acquired under the facts proven. In *Hibbs v. Railway,* supra, it was said that, had the party pursued a legal course to condemn the land, defendant would not have acquired any title, but an easement. In *Brown v. Young,* 69 Iowa 625, it was held that a right of way for a railway company is only an easement, though it be conveyed by deed; and the existence of such easement is not a breach of the covenant as to title in a warranty deed subsequently made, conveying the land. See also *Smith v. Hall,* 103 Iowa 95; *Chicago, R. I. & P. R. Co. v. City of Ottumwa,* 112 Iowa 300; *Capps v. Texas & P. R. Co.* (Texas), 50 S. W. 643. 33 Cyc. 167, states this to be the rule where the land is acquired without condemnation proceedings and without any contract with the owner, as where it is acquired by adverse possession. See also 14 Cyc. 1207, 1208. And we find this rule in 2 C. J. 167, Section 317, that

a claim merely of an easement, or of any other right less than the entire fee, does not give any adverse right to the fee.

Appellants also contend that Section 3004 applies to one who brings an action, and they say that defendant did not bring this action. But they are making an affirmative defense of adverse possession, and they filed a cross-petition in which they pray for affirmative relief, asking that their title be quieted, etc., which we think is no different than if they had brought the suit as plaintiffs. Aside from this, the statute has been applied to easements, whether affirmative or defensive. *Churchill v. Burlington Water Co.*, 94 Iowa 89, 93, 94. In that case, it was said also that the right to discharge soot and smoke upon the premises of another is an easement, and within the contemplation of the statute.

3. ADVERSE POSSES-SION: nature and requisites: applicability of statute: pleading.

3. It is contended by appellee that, under the facts in this case, the appellants could not have acquired more than an easement of right of way in the land; and that, in order to acquire this, it was necessary for them to have complied with Section 3004 of the Code; and that, because of noncompliance with the provisions of that section, the statute of limitations did not begin to run until December 11, 1913, when, for the first time, plaintiff was given to understand that appellants claimed adversely to him. This section is as follows:

4. ADVERSE POSSES-SION: claim of right: express notice: use as evidence.

"In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof; and these provisions shall apply to public as well as private claims."

Appellants cite *Shimanek v. Chicago, M. & St. P. R. Co.*,

152 N. W. 574, where it was held that an easement in a right
of way may be established by adverse possession. A rehearing
was granted and a new opinion was filed. However, this
proposition is conceded by appellee, but they say that there
must be compliance with Section 3004 of the Code, in order
to start the running of the statute, and that, in the *Shimanek*
case, as originally written, the facts brought it within the
section as to notice, because the owner of the strip had made
an oral gift of the land to the railway company and author-
-ized the construction of valuable improvements thereon, and
thereby an estoppel was created. And appellants cite *Gould-
ing v. Shonquist*, 159 Iowa 647, to the proposition that an oral
transfer, with acceptance, furnished sufficient basis for a
claim of right. We may notice here that in that case it was
held that possession alone was not sufficient. Appellants say
further, of the section of the statute under discussion, that
those provisions operate against one affirmatively claiming an
easement by virtue of adverse possession founded solely upon
the mere use of the easement, and that in this case, the defend-
ants claim under a deed of one in possession. And further,
that, in this case, the railway appropriated to its sole use
for railway right of way the strip of ground
now in question, thereby excluding for more
than 10 years every other use thereof, and
that this exclusion amounts to more than evi-

5. ADVERSE POSSES-
SION: claim of
right: "use" as
evidence: com-
petency.

dence of mere use; and further, that, by reason of its exclusive
possession by its superstructure, the railway has monopolized
to itself not only the use but, as well, the physical right of
way itself, and has advised the public of its ownership, under
its deed filed for record April 10, 1902. But is this, after all,
more than the use of the easement? The building of super-
structures upon the land is merely a mode of use, and not
evidence independent of the use, just as grading or laying
pavement is a mode of use of an easement of highway, or the
building of walls a mode of use of party wall. Is it not mere

constructive notice, rather than the express notice required by Section 3004? This statute has been paraphrased in *State v. Mitchell*, 58 Iowa 567, in this wise:

"For, as we think, the meaning of the statute is, that the 'use (of the premises) shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession (that is, that the possession was adverse) shall be proved by evidence distinct from and independent of the use, and by evidence, that the party against whom the claim is made had express notice thereof' (that is, of the use and claim). In other words, a highway cannot be established by user alone, although the owner may have had knowledge of the use but did not have 'express notice,' a claim was made based thereon independent of, or additional to, the mere use. Therefore it does not matter whether the instruction is based on prescription or dedication, or both, it is erroneous. We have no occasion to determine whether the statute applies to a case where a highway has been used by the public for ten years prior to the first day of September, 1873, when the statute took effect, because no such question was submitted to the jury."

We find nothing in the evidence or agreed statement of facts that plaintiff had any express notice of any claim made by defendants, further than the mere occupancy and use of the strip by its railroad. The stipulation on this point is this:

"14. That the plaintiff had no knowledge or notice of the occupancy of said land by said railroad through it, except such constructive notice as the facts herein stipulated, until about the year 1910, nor any knowledge or notice at any time prior to the death of said Alvin C. Gates, Aug. 15, 1913, that the defendants or their alleged predecessors or their alleged grantors or assignors claimed any right in or upon said land by adverse possession."

Soon after the plaintiff became entitled to the possession of the land, which was at the death of his father, in August, 1913, he took up with defendants the question of their con-

tinued occupancy of the land. This was in December, 1913, and then, for the first time, he was confronted with the appellants' claim of right to the land. We quote again from *Hibbs v. Railway*, supra:

"It is claimed by appellants' counsel that, as plaintiff knowingly permitted one of the defendants to enter the land and make improvements, he is estopped from setting up any title thereto. If it is meant that plaintiff cannot set up any claim to the improvements the railroad constructed on the land, he does not do so in the petition. It cannot be claimed that the defendant has acquired any title to the land; all that it could have acquired, had it pursued a legal course to condemn the land, would have been an easement. Certainly it can acquire no more without taking legal steps, and without a contract with plaintiff, which we have seen it has failed to establish. We have never heard that a trespasser entering land may, by any improvement, acquire right to deprive the owner of his property. Had defendant entered upon the land, claiming a right to do so, which was known to plaintiff, and under that claim constructed the road, counsel's position would have some foundation in law to support it. But nothing of the kind is shown. It had no permission by a contract with plaintiff to do so, and did not pursue the course authorized by law in order to acquire such right. It acquired, therefore, no right to hold the land without rendering to the plaintiff just compensation. Its right to the easement, upon making just compensation, determined in a manner provided by the law, as we shall hereafter see, is not denied by plaintiff."

In *Gray v. Haas*, 98 Iowa 502, 504, 505, we said:

"To establish a highway by prescription, under this statute, the fact of adverse possession must be established by evidence distinct from and independent of the use, and by evidence that the party against whom the claim of adverse user and possession is made had express notice of such user and claim of possession. It follows that it is not enough,

to establish a highway by prescription, to show mere use of the land as a highway, even though the owner had actual knowledge of such use. He must have 'express notice that a claim is made, based thereon, independent of or additional to the mere use.' . . . The adverse 'possession must be actual, continued, visible, notorious, distinct, and hostile, and commenced under a claim or color of title.' . . . If it should be conceded that the evidence established the use of the claimed highway for the requisite period, it did not establish the fact that the possession of the users was adverse, by evidence 'distinct from and independent of the use,' as the statute requires. Nor do we think the evidence showed that the defendant had express notice that the public were claiming to hold and occupy this land adversely to him. We hold, then, there was no sufficient evidence to show the establishment of a highway by prescription.''

Counsel for appellants seem not to make any distinction between color of title or claim of right, and adverse possession. Neither color of title nor claim of right is title, but merely elements of adverse possession. The defend-

6. ADVERSE POSSES-
SION: color of ti-
tle: conveyance
by adverse
claimant: effect.

ants' deed upon which they rely is not from the plaintiff, nor is it claimed that there was any verbal arrangement between plaintiff and either of the defendants. Defendants' deed is from one defendant to the other. Defendants do not trace their legal title to a conveyance from E. N. Gates to them or their predecessor. This being so, they must claim by adverse possession alone. E. N. Gates owned the land absolutely when he died, and willed the remainder directly to plaintiff. The railway was not built until after E. N. Gates died. The chain of legal title is in plaintiff. The Jasper County Coal Company could not have been more than adverse claimant against plaintiff, and the deeding of its claim to the defendant herein could not make its grantee any stronger in title. A deed from one adverse claimant to another does not make the second adverse claimant other than an adverse claimant. *Harbach v. Des*

*Moines & K. C. R. Co.,* 80 Iowa 593, 600. It does not appear that the Jasper County Coal Company had title, when it executed its deed of February, 1902, to defendant Colfax Consolidated Coal Company. So far as it is shown, which we must concede is somewhat indefinite, it would seem that there had been some arrangement between Worth, the then life tenant, and one of the defendants or its grantor, about May 11, 1898, when it is claimed that the right of way was paid for by someone. Defendants claim that this deed is color of title even though the grantor therein had no title; but, as before said, that is only one element in the doctrine of adverse possession. Appellants say in argument that the defendant coal company "relies upon its possession under color of title taken under the deed of the Jasper County Coal Company, and that is sufficient, even though, in fact, the Jasper County Coal Company have no valid title."

Section 3004, we think, applies to all claims of an easement by adverse possession, whether under claim of right or color of title. Under this statute, the fact of adverse possession must be shown by evidence distinct from and independent of the use, and it must be shown that the person against whom the claim is made had express notice of the use and claim. We think appellants have failed in these respects to sustain their defense of adverse possession.

Earlier in the opinion, we should have referred to a claim made by appellee, which appellants say is not warranted by the record. This claim, as appellee states it, is:

"The appellants entered the land as 7. ADVERSE POSSESSION: when possession adverse: life tenants and remaindermen. lessees or grantees of Worth. There is no claim made anywhere in the record that they ever held adversely to Worth, but the record is affirmative that they were at all times, as between Worth and themselves, lessees or grantees. They continued in this relation until August, 1913, when the life tenancy ended, and the appellee became entitled to the possession of the land. The appellants and their grantors went into and held pos-

session of the land in controversy, for right of way purposes, under an arrangement with Worth, the life tenant. This was admitted by the general manager of the Colfax Consolidated Coal Company in his conversation with and in his letter to appellee's counsel. The life tenant had a perfect right to allow the appellants to occupy the land so long as his term lasted, provided no injury was done to the remainder. Hence, the occupancy was, in its inception, rightful. This being true, it would continue in the same character and would not become hostile until the right terminated.''

Appellee differentiates *Elcan v. Childress* (Tex.), 89 S. W. 84, and other cases cited by appellants, by this language:

''But here the possessor was a grantee of the life tenant, and the principles announced in the above authorities must therefore govern.''

Appellee makes this claim upon the record before set out in regard to Exhibit ''B,'' and the explanation of plaintiff's counsel, which was by agreement received as evidence in connection with the letter. Appellants, in reply, say that this is evidence offered by plaintiff himself, but it occurs to us that this can make no difference, because it was in evidence and seems not to be disputed by any other evidence or the agreed statement of facts. Appellants further say that the letter is only hearsay, but it went in without objection. If the right of way of the defendants was paid for May 11, 1898, that would be at a time when Worth was the owner of the life estate, as shown by Paragraph 10 of the agreed statement of facts, heretofore set out. And under the explanation of plaintiff's counsel, which was to be treated as evidence, it would seem that the payment of money alleged by defendants to have been made May 11, 1898, for the right of way, was made to Worth. Counsel for appellants have gone into a somewhat extended analysis of the statement of plaintiff's counsel in reference to Exhibit ''B.''

In view of the length of the opinion, we feel that we would not be justified in discussing it further, except to say

that we are inclined to adopt appellee's view of this disputed matter. In this connection, however, it is contended by appellee that the possession of appellants was not adverse to the appellee until after the termination of the life tenancy. As to this, appellants contend that Section 3273 of the Code of 1873, which is similar to Section 4223 of the Code of 1897, authorizes an action by one having a reversionary interest, for the purpose of determining and quieting title. Appellants cite *Murray v. Quigley,* 119 Iowa 6, which they contend holds that a reversioner or remainderman may bring action for determining questions of title under the section as it stood in 1873. Doubtless this may be done, but it does not follow that the remainderman under all circumstances is compelled to do so. Appellants rely upon *Elcan v. Childress* (Tex. Ct. App.), 89 S. W. 84, where it was said:

"But where, as here shown, the possessor is a stranger to the title of both the life tenant and the remainderman, the possession is adverse to both, and each has, as before stated, right of action for recovery as soon as the adverse possession begins; and permitting this possession to continue for the statutory period will bar the right of both the life tenant and the remainderman. From these conclusions it necessarily follows that the right of all of the appellants had been lost prior to the institution of this suit."

To the same point they cite *McConnico v. Thompson* (Tex.), 47 S. W. 537, and *Muller v. Manhattan Railway,* 53 Misc. Rep. 133 (102 N. Y. S. 454). Counsel for appellee distinguish the *Elcan* case from the case at bar, because they say that in that case the possessor is a stranger to the title of both the life tenant and the remainderman, and they say that in such case it might be held that the statute of limitations would commence to run when possession was taken, provided that, in addition, the remainderman had express notice, as provided in Section 3004 of the Iowa statute, and, as before stated, they contend that, under the record, the possessor, defendant coal company, was a grantee of the life tenant, and

that the principles contended for by them, in cases which we shall presently cite, must govern. They make this further distinction between the *Elcan* case and the instant case, that the *Elcan* case was not a railroad case, but one between the rightful claimants of the fee title, and they say that, in the *Elcan* case itself, the following distinction is made:

"The case is not one where the life estate extended to the whole. . . . In such cases the remaindermen have no right to possession until the termination of the life estate, and hence, as to them, limitation will not run until then."

We shall attempt to state appellee's position at this point as briefly as possible, and cite his cases. Their contention is, substantially, that, appellants and their grantors having gone into possession of the land in controversy for right of way purposes under an arrangement with Worth, the life tenant, the life tenant had a right to allow the appellants to occupy the land so long as his term lasted, provided no injury was done to the remainder, and that, therefore, the occupancy was, in its inception, rightful; that, this being true, it would continue in the same character and not become hostile until the right terminated, citing 2 C. J. 124, Sec. 210, where it was said:

"Having begun in consistency with the rightful title it must clearly appear that its character has been changed. Otherwise the possession will retain its original quality through any succession of occupants of the land and will be presumed to be in subservience to the rightful interest. It follows therefore that where the possession of the claimant was in its inception taken with the permission of the owner and in subordination to his title, it cannot become adverse without a distinct and open disavowal of the title of the owner, brought home to the owner."

They cite also 14 Cyc. 1148, to the proposition that, if an easement is enjoyed under a deed, there can be no adverse enjoyment until the expiration of the right under the deed. They cite also 1 Cyc. 1058, to the proposition that:

"The possession of the grantee of a tenant for life does not become adverse to the remainderman or reversioner until after the death of the life tenant; and this is true whether the deed purports to convey only the interest which the life tenant possesses, or the title in fee simple to the premises."

See also 2 C. J. 124, Sections 208, 209.

When appellants continued their possession beyond the period of the life tenancy, they then infringed upon the right of the plaintiff. After they had given express notice of their claim to appellee, December 11, 1913, they became adverse claimants as to him. Appellee commenced legal proceedings in a few weeks thereafter. In *Jerald v. Elly*, 51 Iowa 321, 323, we said:

"The fifth instruction is clearly correct. It, in effect, holds that the use of and exercise of ownership over the right of way is not sufficient to establish a right or raise a presumption of a right thereto. The possession of lands is not evidence of title. In this instance the possession of the railroad company may have been a mere license to terminate at the will of the owner, or it may have been acquired and held by trespass. The use of the land and exercise of ownership over it were, therefore, not sufficient to raise a presumption of title."

They cite also *Hope v. Norfolk & W. R. Co.*, 79 Va. 283, 289, where it was said:

"It only remains to say that the plea of the statute of limitations cannot be sustained. The life tenant died in 1881. It was not until then that the plaintiff's right of possession accrued, and the suit was brought within three years thereafter."

See also *Jackson v. Johnson*, 5 Cowen (N. Y.) 74 (15 Am. Dec. 443); *Daniels v. Chicago & N. W. R. Co.*, 35 Iowa 129; *McClinton v. Pittsburg, F. W. & C. R. Co.*, 66 Penn. St. 404; Pierce on Railroads, 167; *Hope v. Norfolk & W. R. Co.*, 79 Va. 283–289.

4.   Some other questions are argued, but we think those

already discussed are controlling, so that the other questions will be referred to only in a brief way. Appellants say that, as plaintiff was born December 23, 1890, and for the first time asserted a claim by demanding compensation December 11, 1913, when he was nearly 23 years of age, the question as to whether or not he had one year after attaining his majority in which to act is not in the case, and therefore not discussed. Appellants do claim, however, that, as plaintiff was born in 1890 and the railroad built in 1897, and the possession of defendants was more than 10 years previous to the commencement of this action, in January, 1914, the right of. plaintiff was barred before this action was begun, unless the minority of plaintiff operated to toll the statute. Their contention is that plaintiff's minority does not have that effect, because, as they say, a minor may bring an action at any time during his minority, and their claim is that, under the statute and decisions, this rule applies to cases of this character. They cite, at this point, *Mathews v. Stephens,* 39 Iowa 279; *Campbell v. Long,* 20 Iowa 382; *Grether v. Clark,* 75 Iowa 383; *Murphy v. Chicago, M. & St. P. R. Co.,* 80 Iowa 26; *McNeil v. Sigler,* 95 Iowa 587; *Roelefsen v. City of Pella,* 121 Iowa 153; *Murray v. Quigley,* 119 Iowa 6, and other cases. We shall not discuss this feature of the case, because, for reasons before given, we have held that there was no adverse possession, and that defendants have not made out their defense.

5. The claim so far made by appellants is that the plaintiff's right is barred under the ten-year clause of the statute. They also claim that the bar of the statute is operative in

8. EMINENT DO- five years, if this action is to be deemed one MAIN: condem- nation: limita- for injuries to real property. The argument tion of actions. is brief at this point. Having held that appellees' title to the land was not cut off by adverse possession, the question is whether his right to prosecute condemnation proceedings to have his damages assessed was cut off by the statute. In regard to the statute concerning con-

demnation, we said, in *Daniels v. C. I. & N. R. Co.*, 41 Iowa 52:

"There is no provision in this statute prohibiting the corporation from entering upon the land prior to the assessment, or requiring the assessment to be had before the land is occupied. The rights of the parties in case the land should be occupied before the assessment are not prescribed by the statute. But this court has held that the railroad company acquires no right to the land until payment of damages. *Henry v. D. & P. R. Co.*, 10 Iowa 540. . . . The possession of the company before assessment of damages is that of a trespasser."

And in *Hartley v. Keokuk & N. W. R. Co.*, 85 Iowa 455, 459, we said:

"The road was constructed by the defendant over the land in question in the year 1880. It is claimed that, as this proceeding was not commenced within five years from that time, it is barred by Section 2529 of the Code. . . . The proceeding is . . . special, and not an action within the meaning of the provisions of the Code quoted, and the statute of limitations applies only to actions. It is true the provisions of the Code concerning the prosecution of civil actions are to be followed in special proceedings not otherwise regulated, so far as applicable. Code Section 2520. But the provisions contemplated are those which relate to the settling of the issues, the place and manner of trial, and other matters of that character. . . . In *Cuthbertson v. Locke*, 70 Iowa 49, it was said that no defense under the statute of limitations can be interposed in proceedings to establish the boundaries and corners of land. We are of the opinion that the same rule must be applied to proceedings to ascertain the compensation due to a landowner for a right of way taken by a railroad company. The section of the statute specified does not refer to provisions of the law designed to prevent the prosecution of actions because of delay in commencing them."

We think the instant case is ruled by these cases. It may

be that a somewhat different rule applies in cases where a railroad is laid in a street adjacent to property, and not across the property itself. In such cases, the owner of the property cannot institute condemnation proceedings at all, his remedy being a suit for damages. Appellee cites other cases which have a bearing, some of which we cite without discussion. *Fowler v. Des Moines & K. C. R. Co.*, 91 Iowa 533, 540; *Pettit v. Town of Grand Junction*, 119 Iowa 352, 355; *Harbach v. Railway*, supra.

Our conclusion is that the decree of the trial court was right, and it is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.