L. M. Hartley *et al.*, Appellees, v. Keokuk & Northwestern Railway Company, Appellant.

| | |
|---|---|
| 85 | 455 |
| 93 | 25 |
| 85 | 455 |
| 99 | 348 |
| 85 | 455 |
| 106 | 631 |
| 85 | 455 |
| 111 | 430 |
| 85 | 455 |
| 113 | 496 |
| 85 | 455 |
| 137 | 257 |

1. **Eminent Domain**: DAMAGES: ASSESSMENT: PLEADING. The petition of the claimant in proceedings for the assessment, by a sheriff's jury, of damages sustained from the taking of land by a railway company for right of way purposes, need not allege that the owner of the land refused to grant the right of way.

2. ——: ——: ——: ——. An answer in such proceeding alleging that the proceeding is barred by the statute of limitations, that the plaintiff is not the owner of the land in question, but that the defendant is the owner thereof by virtue of a purchase at a foreclosure sale under a mechanic's lien, and through proper condemnation proceedings, and pleading an estoppel, does not require a reply.

3. ———: ———: ———: STATUTE OF LIMITATIONS. A proceeding under section 1254 of the Code upon appeal from the assessment of damages by a sheriff's jury, for private property taken by a railway company for its right of way, is a special proceeding, and is not subject to the operation of section 2529 of the Code, limiting the time for the commencement of actions to recover for injuries to property to five years after the cause of action accrued.

4. ———: ———: ———: TITLE TO PROPERTY. The plaintiffs herein being claimants to the property in controversy through divers conveyances, made by the only persons interested in the property, and designed to vest an absolute title therein, *held*, to be the owners for the purposes of such proceeding, although some of said conveyances were defective.

5. ———: ———: ———: ———. The plaintiff's grantors having made an agreement to convey a right of way to the Keokuk & Minnesota Railway Company upon condition that it build its road through certain land, that company located its line upon the land so designated, and did some grading thereon, but before its completion, the road, including its right of way, was sold under foreclosure of a mechanic's lien, and subsequently conveyed to the defendant. *Held*, that it not appearing that the line of the defendant's road was through the land designated in said agreement, it could not claim title to the land in question by virtue thereof.

6. ———: ———: ———: ———. During the pendency of this proceeding, a master's deed of the railway and franchise of the defendant, including the road through the plaintiff's land, was made to one P. *Held*, that the plaintiffs not being parties to the action in which said deed was ordered, it did not defeat the right of the jury to assess the damages in question.

7. ———: ———: EVIDENCE. It is not competent to ask the plaintiff in such proceeding what damage he has sustained by the construction of the railroad through his land.

*Appeal from Lee District. Court.*—HON. J. M. CASEY, Judge.

MONDAY, MAY 23, 1892.

PROCEEDING to ascertain the compensation to which the plaintiffs are entitled for a right of way occupied by the defendant. From the assessment made by the sheriff's jury the plaintiffs appealed to the district court. A trial in that court resulted in a verdict in favor of the plaintiffs for the sum of seven thousand, nine hundred and sixty-two dollars and twenty-four

cents. Judgment was rendered on the verdict, and the defendant appeals.—*Reversed.*

*D. F. Miller, Sr.,* and *James H. Anderson,* for appellant.

*Craig, McCrary & Craig* and *James C. Davis,* for appellees.

ROBINSON, C. J.—This proceeding was commenced in October, 1886. In November of that year it was enjoined in an action brought for that purpose. That action was subsequently disposed of by an order in harmony with the decision of this court in *Keokuk & N. W. R'y Co. v. Donnell;* 77 Iowa, 221, and further action was had in this proceeding in the latter part of the year 1889. The application of the plaintiffs, filed with the sheriff, asked that a jury be impaneled to assess the damages the plaintiffs had sustained by the taking of the right of way by the defendant for its road from the land of the plaintiffs, described, and alleged that the defendant and the plaintiffs "cannot agree upon compensation to be paid for said right of way over said land." The defendant appeared before the jury impaneled on this application, and filed an answer setting up various defenses, and offered evidence to sustain them. The jury, on the objection of the plaintiffs, refused to consider any evidence excepting that which tended to show the compensation to which the plaintiffs were entitled for the taking of the right of way, and assessed it at the sum of twelve hundred dollars.

I. The appellant contends that the sheriff's jury had no jurisdiction to assess the damages in question, for the reason that the application of the plaintiffs to the sheriff did not allege that the owner of the land "refused to grant the right of way" used by the defendant. Such refusal was not necessary to confer upon the

1. EMINENT domain: damages: assessment: pleading.

sheriff and jury power to act. The land-owner is authorized to institute proceedings of this character after the railway company has completed its road, and when there is no intention of treating the company as a mere trespasser. *Hibbs v. C. & S. W. R'y Co.,* 39 Iowa, 343. In such a case the compensation may be assessed if the owner and the company cannot agree upon it. In this case the plaintiffs, in their application to the sheriff, alleged in effect that they were the owners of the land described; that the right of way of the defendant was taken from it; and that they could not agree with the defendant upon the compensation to be paid. These statements and the demand for relief were all that were required to give the jury jurisdiction to act.

II. There was no reply to the answer. The appellant insists that the answer set up new matter, "which avoided the claim of the plaintiffs." Section 2665 of the Code provides that there shall be no reply except *"first,* where a counterclaim is alleged, or *second,* where some matter is alleged in the answer to which the plaintiff claims to have a defense by reason of the existence of some fact which avoids the matter alleged in the answer." In this case the answer pleaded that the proceeding was barred by the statute of limitations; that the plaintiffs are not the owners of the land in question; that the Keokuk & Minnesota Railway Company, by virtue of certain contracts, had acquired an interest in the right of way which was sold under a decree foreclosing a mechanic's lien, and that the defendant became the owner of such interest; that the defendant acquired the right of way by virtue of due and proper condemnation proceedings had for that purpose; that the plaintiffs knew that the road was being built under a claim of ownership of the right of way in controversy, but made no objection to such building; that after the road was built the defend-

ant furnished the plaintiffs with material for fencing the road, and tendered compensation and demanded deeds according to the contracts with the Keokuk & Minnesota Railway Company; that they are now estopped to make any claim for compensation against the defendant. The answer also contains specific denials, which need not be noticed. It is only necessary to say in regard to the claim under consideration that there is nothing in the answer which required a reply in confession and avoidance. All its averments were denied by operation of law. The case was tried in the district court on the issues tendered by the answer, and we need not determine what pleadings can properly be filed for the consideration of the sheriff's jury, and what should be filed in the district court. It was said in *Keokuk & N. W. R'y Co. v. Donnell,* *supra,* that issues of the character of those in question were triable in such proceedings as these, and the defendant has fully enjoyed the benefit of the law as thus announced.

III. The road was constructed by the defendant over the land in question in the year 1880. It is claimed that, as this proceeding was not commenced within five years from that time, it is barred by section 2529, of the Code. That provides as follows: "Section 2529. The following actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * * *Fourth.* Those founded on unwritten contracts; those brought for injuries to property or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery; and all other actions not otherwise provided for in this respect —within five years." Among the provisions of the Code are the following: "Section 2504. Remedies in civil cases in the courts of this state are divided into

3. —: —: —:
statute of
limitations.

actions and special proceedings. Section 2505. A civil action is a proceeding in a court of justice in which one party, known as the 'plaintiff,' demands against another party, known as the 'defendant,' the enforcement or protection of a private right, or the prevention or redress of a private wrong. * * * Section 2506. Every other remedy in a civil case is a special proceeding." In proceedings for the assessment of damages in cases like this no judgment can be rendered, excepting for costs. Code, section 1257. The railway company may refuse to pay the amount of the assessment and abandon the proposed right of way. *Hastings v. B. & M. R'y Co.*, 38 Iowa, 316; *Gear v. Dubuque & S. C. R'y Co.*, 20 Iowa, 527. The proceedings are designed to ascertain the amount to which the land-owner will be entitled if the right of way is taken, and after the assessment is made the railroad company, by paying costs and damages, if any, for occupying the premises, can relieve itself from further liability. The proceeding is therefore special, and not an action within the meaning of the provisions of the Code quoted, and the statute of limitation applies only to actions. It is true the provisions of the Code concerning the prosecution of civil actions are to be followed in special proceedings not otherwise regulated, so far as applicable. Code, section 2520. But the provisions contemplated are those which relate to the settling of the issues, the place and manner of trial, and other matters of that character. See *Forney v. Ralls*, 30 Iowa, 560; *State v. Clarke*, 46 Iowa, 159; *Whitney v. Atlantic S. R'y Co.*, 53 Iowa, 652. Whether the section referred to was also intended to include the statute of limitations is a question which does not appear to have been fully determined by this court. In *Daniels v. C., I. & N. R'y Co.*, 41 Iowa, 52, a proceeding to ascertain the compensation to be paid the land-owner was instituted more than ten years

after the right of way was taken, but no question as to the statute of limitations was made, and the proceeding was commenced by the railway company. In *Cuthbertson v. Locke*, 70 Iowa, 49, it was said that no defense under the statute of limitations can be interposed in proceedings to establish the boundaries and corners of land. We are of the opinion that the same rule must be applied to proceedings to ascertain the compensation due to a land-owner for a right of way taken by a railway company. The section of the statute specified does not refer to provisions of the law designed to prevent the prosecution of actions because of delay in commencing them.

IV. It is said that the plaintiffs have failed to show title in themselves to the land from which the

4. ——: ——: ——: title to property.

right of way was taken. In January, 1864, William J. Hartley, his brothers, Thomas C., John, George N., and Lindley M., and his sister, Lydia C., entered into an agreement for the formation of a company to continue for five years. In March, 1869, a new agreement was made by all the parties to the first, excepting William, for a renewal of the former company, which is described as a corporation, for an additional term of five years. Both agreements were recorded in the office of the proper county recorder, but no other steps were taken to constitute the company a corporation. The first articles do not appear to have been drawn with the purpose of incorporating the company, and, while the second agreement was in form more like articles of incorporation, yet, in view of all the facts, the company may well be held to have been a partnership, and not a corporation, for the purposes of this action. There is much confusion in the record as to the name of the owner of the land. The name of the company as shown by the articles of agreement was "T. C. Hartley & Brothers Farming & Trading Co." It is con-

ceded in the record that the land was owned by "T. C. Hartley Bros." prior to the year 1869, and during the year 1870. In the year 1874 George N. Hartley conveyed his interest in the land to "Hartley Bros.," who are shown to be the plaintiffs in this case. In March, 1880, Lydia C. Hartley conveyed her interest to "T. C. Hartley Bros." In the same month T. C. Hartley conveyed his interest to L. M. and John Hartley. In December, 1885, John Hartley conveyed his interest to David C. Hartley. William J. Hartley is not shown to have executed a formal conveyance of his interest, but it appears that he withdrew his interest in the company when the agreement of 1869 was made, and that he has no interest in the property in question. Since 1885 the business of the company has been carried on by plaintiffs, and none of the other members of the company have any interest in or make any claim to the land. Some of the conveyances through which the plaintiffs make claim may be defective, and this is especially true if the company be regarded as a corporation which at one time held the title to the land; but they were designed to vest in the plaintiffs the absolute title to the land by the only other persons interested in the property, and the plaintiffs must be regarded as the owners for the purposes of this proceeding. Before it was commenced, John Hartley assigned to D. A. Hartley his claim against the defendant, and the plaintiffs are now entitled to receive whatever the defendant is liable to pay for the right of way in question.

V. The defendant claims to be the owner of the right of way by virtue of agreements and proceedings as follows: In the year 1870, T. C. Hartley & Bros. signed an agreement, of which the following is a copy:

"In consideration of three hundred dollars, paid by canceling the subscription to said railway company, the receipt whereof is hereby acknowledged, we do

agree to convey to the Keokuk & Minnesota Railway Company the right of way, not exceeding sixty-six feet in width, through the northeast quarter of section twelve, southeast quarter of section one, northwest quarter northeast quarter section one, all in township sixty-nine, range seven, Lee county, Iowa, provided the line is located north and south across said northeast quarter of section twelve, starting from where the line now crosses the south line of said quarter section; the same to be deeded to the aforesaid company on demand after said road shall have been built through said land. Witness our names this sixteenth day of August, 1870.                    T. C. Hartley & Bros.

"Signed in the presence of

"Wm. Timberman."

"Said railway company to furnish said Hartley & Bros. fencing boards and posts enough to make a strong fence along the line of said railway across the southeast quarter of section one, within one month after the track is laid; said Hartley & Bros. to furnish the nails and put up the fence without cost to said railway company."

At about the same time Rachel Bunker, who it appears, claimed title to a part of the land in question, signed an agreement as follows:

"In consideration of fifty dollars, I do agree to convey to the Keokuk & Minnesota Railway Company the right of way, not exceeding sixty-six feet in width, through the south half of the northeast quarter of section one, township sixty-nine, range seven, Lee county, Iowa, the fifty dollars to be paid when the first passenger train passes over the land; the same to be deeded to the aforesaid company on demand after said road shall have been built through said land, and not until the fifty dollars is paid. Witness my name this second day of August, 1870.

"Rachel Bunker.

"Signed in presence of Guy Wells."

The Keokuk & Minnesota Railway Company located the line of its proposed railway over the land in question, and in 1870, it did some grading on that line. In August, 1876, the Keokuk & Minnesota Railway Construction Company filed in the office of the district court of Lee county a statement for a mechanic's lien on the property of the Keokuk & Minnesota Railway Company, including its right of way. In March, 1878, the lien of the construction company was foreclosed, the decree describing the right of way as "a strip or belt of land from sixty-six to one hundred feet wide, as the same is located or marked," to the north line of Lee county. Special execution issued on the decree, and the property therein described was sold to William Timberman, trustee, in May, 1878. Proceedings were afterwards had in probate in the circuit court of Lee county in the matter of the estate of William Timberman, deceased, in which an order was made substituting Guy Wells in place of Timberman, as "trustee for the strip of land from sixty-six feet to one hundred feet in width, from Keokuk to the north line of Lee county, Iowa, as located by the Keokuk & Minnesota Railway Company." In July, 1880, Wells, as trustee, executed to the defendant a deed for the strip of land "as the same is located, staked out, and worked  *  *  *  on the line located and established by the Keokuk & Minnesota Railway Company." In June, 1880, the defendant instituted proceedings for the assessment of the compensation for the right of way in question. Damages were assessed in that proceeding in favor of members of the construction company, but none of the Hartleys were made parties to it. The theory of the defendant is that the Keokuk & Minnesota Railway Company had acquired title to the right of way which was transferred to the defendant by means of the decree and sale in the foreclosure proceedings and the assessment proceeding of 1880, and that compensation for the right of way

has once been paid to the land-owners, and cannot again be recovered.

The appellees contend that the interest of the Keokuk & Minnesota Railway Company in its right of way was not sufficient to support a mechanic's lien; that whatever interest it had, reverted to the owners of the land for failure to use the right of way for a period of more than eight years; and that the defendant's proceeding of 1880 was ineffectual to divest the owners of title because they were not made parties to it. It is also insisted that the probate court had no power to substitute Wells for Timberman as trustee.

The agreement signed by T. C. Hartley & Bro. recites a consideration of three hundred dollars, paid by canceling a subscription to the Keokuk & Minnesota Railway Company. It provided for the delivery of a deed on demand after the road of that company should be built on a line which was in part designated. The road specified was never built, and it does not appear that the road of the defendant was constructed on the line contemplated in the agreement. On the contrary, it is clearly shown that the road of the defendant runs for more than one and three-fourths miles through the land of the plaintiffs; that it follows the line of the old company for about half a mile, and that for the remainder of the distance it is on a wholly different location, most of which is nearly one-fourth of a mile from the former one. It thus appears that, if any interest in a right of way was conveyed by means of the foreclosure proceedings—a question we do not find it necessary to determine—it was not an interest in at least five-sevenths of the right of way in controversy, and the defendant has failed to show that there was any conveyance of an interest in the remaining two-sevenths, for it is not shown that any part of its line is located where the contract of T. C. Hartley & Bro.

required a portion of the road to which it referred to be built. There is no pretense that the fifty dollars specified in the contract of Rachel Bunker has been paid, and we conclude that the defendant has wholly failed to show that the Keokuk & Minnesota Railway Company ever acquired an interest in the right of way now in controversy, or to show that compensation therefor has ever been paid to the owners of the land. It follows that the defendant has failed to show that it acquired any interest adverse to the plaintiff by virtue of the conveyance of Wells, or by its assessment proceeding of 1880.

VI. The defendant introduced in evidence a deed executed by the master in chancery of the United States circuit court for the southern district of Iowa, eastern division, dated April 1, 1889, which purports to convey to C. E. Perkins the railway and franchise of the defendant, including the railway over the land of the plaintiffs. It is said that this deed defeated the right of the sheriff's jury to assess the damages in controversy. In regard to this it is sufficient to say that the deed was made while this proceeding was pending, and the plaintiffs were not made parties to the action or proceeding in which the deed was ordered. They are not, therefore, affected by the deed.

VII. One of the plaintiffs was asked this question: "What, in your judgment, is the difference in the fair market value of your farm, taken as a whole, before the railroad ran through it and after? What was the damage to you at the time the railroad was constructed in 1880?" The question was duly objected to, but the witness was permitted to answer: "The damages, I do not think, would be less than eight thousand dollars, or near same." The question was clearly erroneous, under repeated decisions of this court. In *Prosser v. Wapello Co.*, 18 Iowa,

330, witnesses were asked this question: "State what will be the damages to Mr. Prosser by the laying out and establishing said road, aside from any damages that would accrue to his ferry right or ferry privileges; that is, what would be the damage to his said lands and the improvements thereon?" This court said of the ruling which permitted the question to be asked that it "was clearly erroneous. This, if allowed, would make the witnesses perform the functions of the jury. The furthest courts have gone is to allow witnesses otherwise properly qualified to give opinions as to the value of property. * * * No extension of the rule is allowable. There is a manifest difference between proving value and proving damages by the opinion of witnesses." In *Renwick v. D. & N. W. R'y Co.*, 49 Iowa, 674, a witness was asked this question: "Tell the jury what was the difference in value of this property before and after the railroad was built." This court held that it was improper, because it asked the witness to state directly the amount of damage to the property, instead of asking the value before and after the condemnation. *Sater v. Plank-road Co.*, 1 Iowa, 393; *Henry v. Dubuque & P. R'y Co.*, 2 Iowa, 308; *Dalzell v. City of Davenport*, 12 Iowa, 440; *Russell v. City of Burlington*, 30 Iowa, 264; *Fleming v. Chicago, D. & M. R'y Co.*, 34 Iowa, 356; *Harrison v. Iowa M. R'y Co.*, 36 Iowa, 324. Similar questions were asked other witnesses, and answers permitted, notwithstanding the objections of the defendant.

For the error in admitting evidence, the judgment of the district court is REVERSED.