Richard **BEER**, Respondent,

v.

**MINNESOTA POWER & LIGHT COMPANY**, Appellant.

No. C5-86-1125.

Supreme Court of Minnesota.

Feb. 13, 1987.

Douglas W. Peterson, James R. Habicht, Duluth, for appellant.

James Bang, Duluth, for respondent.

COYNE, Justice.

Respondent Richard Beer commenced these proceedings in inverse condemnation on December 26, 1985, alleging that his property was damaged by the vacation and closing of a portion of State Highway No. 6 as a result of the expansion of Minnesota Power & Light Company's (MPL) Clay Boswell generating plant near Cohasset, Min-

nesota. MPL moved for summary judgment on the ground that the six-year statute of limitations bars this action commenced more than seven years after the vacated portion of the highway was closed and rerouted. Respondent Beer contended, however, that his claim is not subject to any statute of limitations, that the damage to the bait business he operates on his property did not occur until 1980 and that, in any event, he is entitled to recover for those continuing damages occurring within the six years immediately preceding the commencement of this action. The trial court denied the motion for summary judgment and certified the question as important and doubtful. We reverse and direct the entry of judgment in favor of appellant MPL.

In 1976 MPL began acquiring land for the expansion of the Clay Boswell Station. The expansion plans contemplated the acquisition by purchase or condemnation of all the land adjacent to State Highway No. 6 along a 2½ mile stretch of highway west of Cohasset. By November of 1978 MPL owned all the land necessary for its expansion project, and on November 13, 1978, the Minnesota Commissioner of Transportation vacated that portion of State Highway No. 6 lying within the boundary of the MPL land. Public use of the vacated portion of the highway was terminated on November 20, 1978, when MPL closed the gates at the edge of the station property.

Beer's property is situated in Cohasset (now Bass Brook Township) on the south side of former State Highway No. 6 about three blocks west of its intersection with U.S. Highway No. 2. Although it is no longer called State Highway No. 6, the roadway adjacent to respondent's property is open and unchanged, and access to Beer's property from the east and U.S. Highway No. 2 is unimpaired. The closed portion of State Highway No. 6 lies westerly of a point approximately seven-tenths of a mile west of Beer's property. Rerouted State Highway No. 6 now meets U.S. Highway No. 2 about five miles northwest of the former intersection.

The Minnesota Constitution, by amendment adopted in 1896, confers a right to compensation for damaging as well as taking private property.[1] It is, of course, well recognized that the right of access to a public highway from abutting property is an interest in land and an incident of ownership. The right of access is subject to the law of eminent domain and may be extinguished for public use, but only upon payment of proper compensation. *E.g., Burnquist v. Cook,* 220 Minn. 48, 57, 19 N.W.2d 394, 399 (1945). This court has also held that limitation of access to a controlled-access highway may result in compensable damages to abutting property: when the modification of the highway "substantially impairs [an abutting owner's] right to reasonably convenient and suitable access to the main thoroughfare," owners of abutting land are entitled to damages. *Hendrickson v. State,* 267 Minn. 436, 446, 127 N.W.2d 165, 173 (1964).

The gravamen of the landowner's action in cases such as this where there is no actual taking or physical occupation of the land is the loss of access—not the diversion of traffic. We have previously observed that a property owner has no vested interest in the continued flow of the main stream of traffic, and the state may divert it to a new location without being liable for those consequential economic losses which owners of property abutting on the old highway may sustain. *Id.* at 442, 127 N.W.2d at 170.[2] Here the loss of convenient access to State Highway No. 6 occurred on November 20, 1978, when a por-

---

1. Minn. Const. art. 1, § 13, provides as follows: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

2. Although MPL has pleaded that the complaint fails to state a claim on which relief can be granted, MPL's motion for summary judgment was based solely on the bar of the statute of limitations. For purposes of this appeal it is assumed there has been an impairment of Beer's right to reasonably convenient and suitable access and not merely a diversion of traffic.

tion of the highway was closed and rerouted. Nevertheless, Beer contends that the damages occasioned by the closing of the highway did not occur until 1980 when the construction work on the generating station was completed. Then the flow of workers past his bait shop dried up, and "the damages really were felt."

 Undoubtedly, the full impact of the cessation of public use of former State Highway No. 6 did not become apparent until the completion of the expansion project and the consequent reduction in the number of persons going onto MPL's property. But it is not the realization of the extent of damages, it is the interference with a property right which gives rise to a right to commence inverse condemnation proceedings. The actionable interference, however, is not—as the respondent contends—the limitation of access to his bait business with damages measured by the reduction in its profitability. The compensable injury is the interference with the right of access to the highway from his real property measured by the diminution in the market value of the property. The principle is fully explicated in *Hendrickson v. State*, 267 Minn. 436, 446–47, 127 N.W.2d 165, 173 (1964):

> If the jury determines that plaintiffs are entitled to recover, the measure of damages is the difference between the market value of the property before and after suitable access has been denied. In awarding damages the jury may consider any change in the highest and best use which may have consequently occurred. For this limited purpose the court may in its discretion receive with caution evidence of lost patronage. However, no damages as such may be assessed for

diversion of traffic or for loss of customers, business, goodwill, income, or profits since the latter depend not only on the location of access but on such complex and intangible variables as the initiative and industry of the proprietors. Personal attributes such as these will continue to influence the success or failure of a business enterprise wherever it is located. Hence, the diminution in value of only the real estate is relevant.

 Moreover, the cause of action arises out of a limitation of access, not a continuing trespass or a nuisance. Although damages measured by a loss of profits from a business occur over a period of time, the diminution in the market value of real estate occurs at an identifiable moment in time. Here, the interference with the property right and the damages occurred simultaneously. The diminution in the market value of real estate resulting from a limitation of access is a single injury, not a series of recurring injuries such as the series of soil subsidences resulting from a removal of lateral support. *Forsythe v. City of South St. Paul*, 177 Minn. 565, 225 N.W. 816 (1929). Any diminution of the market value of Beer's property was determinable on November 20, 1978 when access was limited by the closing of the gates on the vacated portion of State Highway No. 6.[3]

We are left, then, with the task of identifying the proper limitation period. Respondent contends that there should be no limitation on the time within which a claim for compensation may be asserted by the owner of property appropriated to public use or that, if such a claim is subject to limitation, the appropriate limitation is the 15–year limitation imposed by Minn.Stat.

---

3. We note that it has been held in one state that where the statutory reclassification of a highway would operate to destroy an abutting owner's right of access, the statute of limitations does not start to run against the abutting owner until he discovers the taking of his property right. *State ex rel. Ashworth v. State Road Commission*, 147 W.Va. 430, 128 S.E.2d 471

(1962). As the trial court pointed out, however, respondent was aware of the planned expansion of the generating plant and the highway rerouting as early as 1976 and he then claimed that he was entitled to be included in the condemnation proceedings. In response to an inquiry by respondent's lawyer, MPL advised on October 24,

§ 541.02 (1986).[4] It has long been established that a claim for compensation by the owner of property appropriated for public use may be barred by the lapse of time. *E.g., Stewart v. State,* 105 N.Y. 254, 11 N.E. 652 (1887). It is not uncommon for states to provide a special statute of limitations in eminent domain proceedings when the burden of taking the initiative in applying for compensation is thrust upon the owner; and since public policy requires the speedy closing up of such proceedings, so that the expense may be definitely known before further improvements are undertaken, it is customary to provide a much shorter period of limitations than in ordinary civil actions. 27 Am.Jur.2d, *Eminent Domain* § 498 (1966). At least one state regards an inverse condemnation action as one based upon an implied contract and has applied its statute limiting actions upon any unwritten contract, express or implied. *Prendergast v. Northern Virginia Regional Park Authority,* 227 Va. 190, 313 S.E.2d 399 (1984).

▮ In Minnesota neither condemnation proceedings nor inverse condemnation actions are governed by a special statute of limitations. Minnesota has, however, recognized that actions for compensation in the event of a taking of private property for public use is subject to statutory limitations. In *Forsythe v. City of South St. Paul,* 177 Minn. at 569, 225 N.W. at 817, the court endorsed the application of general statutes of limitations in such circumstances. There, the city removed lateral support from adjacent land when grading a street. It was held that under the constitution of this state private property may not be taken, destroyed or damaged for public use without compensation and that where the action was not based on an actual taking of the property but on damage to the real property, the six-year statute of limitation, which is today found at Minn.Stat.

§ 541.05, subd. 1 (1986), is applicable. In so holding, the *Forsythe* court distinguished those cases in which property is actually taken and retained for public use without compensation and stated that "[i]n such cases it is clear that the owner can maintain an action for the recovery of the property within the time limited by statute for the recovery of real property." *Id.,* 177 Minn. at 568, 225 N.W. at 817. Accordingly, although the 15–year limitation imposed by Minn.Stat. § 541.02 (1986) is applicable in cases in which there has been an actual taking of property, we hold that in actions for inverse condemnation or compensation for damages resulting from the limitation of access only, where the public authority is not in adverse possession of the landowner's property, the six-year statute of limitations is applicable. Accordingly, respondent's action, which was commenced more than seven years after accrual of his cause of action, is barred.

Reversed.

---

1978 that any action in inverse condemnation should be asserted against MPL.

**4.** The first paragraph of Minn.Stat. § 541.02 (1986), provides as follows: "No action for the recovery of real estate or the possession thereof

shall be maintained unless it appears that the plaintiff, the plaintiff's ancestor, predecessor, or grantor, was seized or possessed of the premises in question within 15 years before the beginning of the action."