Gene P. SCOTT, Joyce A. Scott, Arnold W. Madsen, Mary G. Madsen, Jim Fitch and Frank Fitch as Trustees of the John L. Connolly Trust, Appellants,

v.

The CITY OF SIOUX CITY, Iowa, Appellee.

No. 87–1644.

Supreme Court of Iowa.

Nov. 23, 1988.

David E. Vohs of Bikakis, Vohs, Storm & Arneson, Sioux City, for appellants.

James L. Abshier, City Atty., C. Maurice Rawe, Ann K. Jansen and George Carroll, Asst. City Attys., for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiffs commenced these proceedings for inverse condemnation of their

property on July 31, 1987, alleging the city had taken their property without compensation by passing a zoning ordinance restricting commercial development.[1] The city moved for summary judgment on the ground that the five-year statute of limitations codified at Iowa Code section 614.1(4) (1987) bars this action. Plaintiffs contended, however, that their claim is not subject to any statute of limitations, that their damages were not ascertainable until commercial development proposed for their property occurred elsewhere, and that, in any event, the continuing existence of the challenged ordinance constituted a continuing violation entitling them to recover for damages incurred within the ten years preceding the commencement of this action. The district court granted the city's motion for summary judgment, finding that, although the ordinance constituted a continuing violation, any damages to the plaintiffs had occurred more than five years before the commencement of the action. We affirm the district court's judgment in favor of the city.

The following facts appear from the pleadings. In 1962 plaintiffs purchased property located outside the southern limits of the city of Sioux City, Iowa. In 1966 the city annexed the property, and it was zoned ML for commercial use. On May 1, 1974, plaintiffs sold approximately nineteen acres of this tract to General Growth Properties, a development company. General Growth purchased the property with the plan of constructing a shopping center. Plaintiffs retained approximately seventy acres adjacent to the tract sold to General Growth. Their plans for the property included the development of commercial retail businesses peripheral to the shopping center.

On June 3, 1974, General Growth publicly announced its plans to develop a shopping center. Shortly thereafter, the city of Sioux City initiated a review of its Comprehensive Plan and zoning ordinance. On July 22, 1974, the city council enacted an interim development ordinance temporarily prohibiting the issuance of building permits, the approval of site plans for construction in certain general areas, including the plaintiffs' property, and placed a moratorium on the creation of certain kinds of commercial uses, including those proposed by the plaintiffs and by General Growth.

On August 2, 1976, the interim ordinance was replaced by the enactment of new permanent comprehensive zoning ordinances. Among other changes, the new regulations altered the types of uses permitted on property in an ML classification. The new ML classification permanently prevented the plaintiffs and General Growth from developing a shopping center and peripheral retail businesses as they had planned.

Plaintiffs did not try to obtain a building permit, nor did they apply for a variance under either the interim ordinance or the permanent ordinance. In October 1976, plaintiffs petitioned the city council to enlarge the types of uses permitted on property subject to ML zoning so as to permit them and General Growth to proceed with their development plans. On October 4, 1976, the city council rejected the application.

On March 29, 1977, plaintiffs filed an action identified as Equity No. 92555 in the Iowa District Court for Woodbury County. In that action they sought to obtain damages from the city of Sioux City for inverse condemnation of their property allegedly stemming from the enactment of the temporary and permanent ordinances described above. On January 25, 1980, that action was dismissed by the operation of Iowa Rule of Civil Procedure 215.1.

On January 19, 1979, plaintiffs filed a civil action against the city of Sioux City and other defendants in the United States District Court for the Northern District of Iowa. Among other claims, the petition asserted the city's enactment of the temporary and permanent zoning ordinances con-

---

**1.** The term "inverse condemnation" is perhaps not so widely employed in legal parlance as to convey an established meaning. It has come to be used as a generic description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted. *See United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980).

stituted a taking without compensation in violation of the plaintiffs' civil rights under 42 U.S.C. section 1983. The federal district court granted the city's motion for summary judgment. That ruling was affirmed by the United States Court of Appeals for the Eighth Circuit on June 8, 1984. *Scott v. City of Sioux City, Iowa,* 736 F.2d 1207 (1984).

In the present action, plaintiffs challenge the city's 1974 enactment of the interim ordinance, its 1976 enactment of the permanent zoning ordinance, its 1976 refusal to enlarge the uses permitted in an ML zone, and its action in permitting the continued existence of the permanent ordinance.

## I. *Applicable Period of Limitations.*

■ Plaintiffs first contend that no statute of limitations can operate to cut off a claim of inverse condemnation because it is an issue of constitutional magnitude. Therefore, they contend, their claim cannot be cut off by the passage of time short of the city acquiring the land through adverse possession. For support, they rely on the Washington Supreme Court's decision in *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 348 P.2d 664 (1960).[2]

However, in the context of a regulatory takings claim, the Washington Supreme Court rejected the contention that the constitutional magnitude of the claim prevents application of statutes of limitation. *Orion Corp. v. State,* 109 Wash.2d 621, 634, 747 P.2d 1062, 1069 (1987); *accord Hart v. City of Detroit,* 416 Mich. 488, 495–96, 331 N.W. 2d 438, 441 (1982); *Beer v. Minnesota Power & Light Co.,* 400 N.W.2d 732, 735–36 (Minn.1987). The contention is also contradicted by United States Supreme Court decisions applying state statutes of limitation to inverse condemnation claims grounded on the fifth amendment. *E.g., United*

*States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947).

In addressing this argument, the Washington Supreme Court in *Orion* noted that an enactment which perpetrates a regulatory taking could never meet the elements of adverse possession, and therefore, if no other period of limitations applied, the government could never extinguish a regulatory takings claim. Absent a period of limitations, the court stated, damages on the inverse condemnation claim would continue to mount until the plaintiff chose to bring the action. 109 Wash.2d at 634, 747 P.2d at 1069. *Accord Ranch 57 v. City of Yuma,* 152 Ariz. 218, 221–22, 731 P.2d 113, 116 (Ariz.App.1986) (rejecting application of statute of limitations for adverse possession to a regulatory taking claim).

Second, plaintiffs contend that if any statute can operate to cut off their claim, the applicable period of limitations is Iowa Code section 614.1(5) providing a ten-year period for actions "brought for the recovery of real property." Plaintiffs rely on *Krambeck v. City of Gretna,* 198 Neb. 608, 254 N.W.2d 691 (1977), in which the Nebraska Supreme Court applied a statute of limitations governing actions for "the recovery of title to or possession of land" to an inverse condemnation claim based on overflow from the city's sewage plant.

We are not persuaded that this is the most applicable statute of limitations in the context of a regulatory taking, rather than a physical trespass. The Michigan Supreme Court noted in *Hart* that even where plaintiffs had lost all possession of their property, their inverse condemnation action could not be characterized as an action for the recovery of property, since the plaintiffs did not seek the return of title, but rather compensation from the government. 416 Mich. at 498, 331 N.W.2d at 444–45. *See also Ranch 57,* 152 Ariz. at 221, 731

---

**2.** Plaintiffs also rely upon *Gates v. Colfax N. Ry.,* 177 Iowa 690, 159 N.W. 456 (1916), and *Hartley v. Keokuk & N.W. Ry.,* 85 Iowa 455, 52 N.W. 325 (1892), for support in the contention that no statute of limitations applies to inverse condemnation actions. However, the district court correctly determined that those cases are not analogous to the present action. In those decisions,

the court rejected the application of general statutes of limitation to actions brought under special statutes to obtain assessment and compensation for easements taken by railroad companies on the ground that the actions were special in nature, rather than ordinary. *Gates,* 177 Iowa at 715, 159 N.W. at 465; *Hartley,* 85 Iowa at 459, 52 N.W.2d at 353.

P.2d at 116 (rejecting application of statute of limitation for "recovery of possession or to clear title to real property" to regulatory taking claim). The Minnesota court in *Beer* drew a distinction between actions for damages resulting from physical invasion and for those resulting from the limitation of property use resulting from government regulation. The first action is characterized as one for an actual taking; the second, as an action for damages to property. 400 N.W.2d at 736.

■ When disagreement arises as to which of the several periods of limitation contained in Iowa Code section 614.1 is applicable, we must determine, as best we can, which of the types of actions described in the statute most nearly characterizes the action before the court. *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 462 (Iowa 1984); *Clark v. Figge*, 181 N.W.2d 211, 213 (Iowa 1970). This task is made more difficult by the fact that some of the limitation periods contained in section 614.1 are tied to the legal source of the right or obligation sought to be enforced while others are tied to the type of loss or injury for which recovery is sought. The periods of limitation suggested as being applicable by the plaintiffs and the city both are tied to the type of loss or injury sustained.

We believe the most appropriate period of limitation for the type of injury sustained in the present case is the five-year period provided in Iowa Code section 614.-1(4) governing actions

> brought for injuries to property ... and all other actions not otherwise provided for in this respect ....

This conclusion is consistent with our prior decisions finding this statute applicable to actions brought to recover for injuries to interests that are essentially "proprietary in nature." *See Clark*, 181 N.W.2d at 216.

II. *Accrual of Plaintiffs' Cause of Action.*

■ The district court concluded that the city's maintenance of the ordinance in question constituted a continuing violation tolling the applicability of the statute of limita-

tions. Plaintiffs contend that the defendant did not appeal this particular finding, and therefore cannot challenge it in their action for review. However, the city's argument that the ordinance does not constitute a continuing violation was urged before the district court, and is submitted here in the city's responsive brief. A successful party may, without appealing or assigning errors, seek affirmance of a district court decision on any ground asserted before the district court, even if rejected therein. *E.g., Anthony v. State*, 374 N.W.2d 662, 664 (Iowa 1985); *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980).

■ As a general rule, no cause of action accrues under Iowa law until the wrongful act produces injury to the claimant. *Collins v. Federal Land Bank of Omaha*, 421 N.W.2d 136, 140 (Iowa 1988); *Wolfswinkel v. Gesink*, 180 N.W.2d 452, 456 (Iowa 1970). The applicable statute of limitations begins to run when the claimant has discovered his or her injury, or should have discovered it through the exercise of reasonable diligence. *Sandbulte*, 343 N.W.2d at 462.

Plaintiffs contend the ordinance in question has the character of a continuing violation which tolls the applicability of a period of limitations. They also contend no damage could have been assessed by a court until General Growth purchased an alternative site for the development of the shopping center.

We have considered the nature of a continuing wrong in several cases. In *Anderson v. Yearous*, 249 N.W.2d 855 (Iowa 1977), claimants seeking nuisance damages for intermittent flooding caused by a levee on adjacent property brought their action more than five years after the structure was erected. We held that for purposes of the statute of limitations, erection of the structure was not the determinative date, stating "[w]here resultant injuries are recurring and successive actions will lie, the limitation period runs from the occurrence of each such injury." 249 N.W.2d at 860. We stated that such a claimant could recover for damages resulting from

flooding occurring in the five-year period preceding institution of the action. *Id.* Similarly, in *Earl v. Clark*, we held that a claimant seeking nuisance damages caused by waste drainage from a cattle feedlot on adjacent land could recover for damages occurring within the five-year period preceding the date of trial. *Earl v. Clark*, 219 N.W.2d 487, 491 (Iowa 1974). In *Eppling v. Seuntjens*, 254 Iowa 396, 117 N.W.2d 820 (Iowa 1962), the claimant sued for damage to his property attributable to flooding caused by the defendant's erection of a dike. We stated that the plaintiff's causes of action for the intermittent floodings accrued as each episode occurred, and permitted the plaintiff to recover for damages sustained in the five-year period preceding commencement of the action. 254 Iowa at 404, 117 N.W.2d at 825.

■ However, in the present case, the cause of action arises out of the enactment of a land use regulation, not a continuing nuisance or trespass. Although damages for flooding and physical invasion can occur intermittently over the passage of time, in this case, the passage of the permanent ordinance had immediate adverse economic consequences for plaintiffs. The regulation's impact on the development potential and market value of the property was immediate, and constituted a single injury. *Accord Beer*, 400 N.W.2d at 735; *Ocean Acres Ltd. v. Dare County Board of Health*, 707 F.2d 103, 106–07 (4th Cir.1983).

■ Our conclusion as to the time plaintiffs' cause of action accrued is bolstered by the fact that they filed their first action for inverse condemnation on March 29, 1977, before General Growth is alleged to have purchased an alternative site. They obviously believed that they had sustained injury at that time. We hold that the statute of limitations as to this action began to run no later than March 29, 1977, the date on which plaintiffs filed their first action seeking recovery for inverse condemnation.

We conclude the inverse condemnation claim asserted here is barred by the statute of limitations. We therefore affirm the judgment of the district court.

AFFIRMED.