# IN THE COURT OF APPEALS OF IOWA

No. 18-0643
Filed October 23, 2019

**DENVER SUNSET NURSING HOME,**
 Plaintiff-Appellant,

**vs.**

**CITY OF DENVER, IOWA,**
 Defendant-Appellee.
_____

 Appeal from the Iowa District Court for Bremer County, Christopher C. Foy, Judge.


 Denver Sunset Nursing Home appeals the district court's order on the parties' competing motions for summary judgment. **REVERSED AND REMANDED.**

 David J. Dutton and Erich D. Priebe of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

 Randall H. Stefani and Maria E. Brownell of Ahlers & Cooney, P.C., Des Moines, for appellee.

 Timothy J. Whipple, Iowa Association of Municipal Utilities, Ankeny, for amicus curiae.

 Considered by Vaitheswaran, P.J., Vogel, S.J.,* and Scott, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

We must decide whether an entity that was overcharged for electric service was limited to recovering overcharges for a period within five years of its lawsuit.

## I.    *Background Facts and Proceedings*

The City of Denver "owns and operates its municipal electric utility, which serves both commercial and residential customers within the City of Denver, Iowa." Denver Sunset Nursing Home is a long-term care facility. From 1985 to 2014, the City unknowingly overcharged Denver Sunset for its electricity usage. Upon learning of the overcharges, the City immediately curtailed them. The overcharges between 1985 and 2014 totaled $996,194.03, including interest.

In 2016, Denver Sunset filed a petition for declaratory judgment against the City and sought "full reimbursement" for the overcharges. The City moved for summary judgment, "request[ing] an order limiting the time period for recovery for alleged overcharges to five years." Denver Sunset countered with its own motion for summary judgment. It sought an order in its favor "on the issue of the City's liability."

The district court partially granted both motions. The court concluded, "[T]he outcome of this case is governed by Iowa Code section 614.1(4) [(2016)], the statute of limitations for claims based on unwritten contracts and for other actions. Such claims and actions must be brought within five years after their causes accrue." The court further concluded, "Section 614.1(4) limits what [Denver Sunset] can recover to the overcharges it paid within five years of

December 20, 2016, when it commenced this action." The court entered judgment in favor of Denver Sunset for $47,917.96.[1]

Denver Sunset filed a motion for enlarged findings seeking application of the discovery rule. The court denied the motion. This appeal followed.

## II. Analysis

Denver Sunset argues "the district court erred in awarding only partial judgment . . . for over 28 years of excessive billing." In its view, its "claim against the City—whether sounding in contract or in unjust enrichment—is subject to the discovery rule, which entitles [it] to complete relief."

Our review of this issue is for errors of law. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

As noted, the district court invoked Iowa Code section 614.1(4). Under this provision, actions "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for" must be

---

[1] After the City discovered the error in March 2014, the overcharges ended. For that reason, the $47,917.96 realistically represents reimbursement for overcharges from December 2011 to March 2014.

brought "within five years" after they "accrue," except as provided in certain subsections inapplicable to this case. *See* Iowa Code § 614.1(4).

Denver Sunset does not dispute that, of the statutory limitations periods set forth in section 614.1, section 614.1(4) is the applicable provision. The City, in contrast, is more equivocal. On the one hand, the City asserts it "does not necessarily agree the relationship between a municipal utility and its ratepayers is purely contractual." On the other hand, it contends "the district court properly premised the limitation period upon the contractual nature of the relationship."

We agree with the district court that section 614.1(4) was the applicable limitations period. For reasons discussed later, we are persuaded there was a contractual relationship between the City and Denver Sunset. Regardless, section 614.1(1) also applies to "other actions." At the very least, Denver Sunset's lawsuit fell within the "other actions" category.

We turn to when Denver Sunset's causes of action "accrued." *See Shams v. Hassan*, 905 N.W.2d 158, 164 (Iowa 2017) ("The key question is when those causes of action [under section 614.1(4)] 'accrue.'"); *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 462 (Iowa 1984) ("Actual application of the appropriate statutory period to a particular case requires the determination of when the claim accrued."), *overruled on other grounds by Langwith v. Am. Nat'l Gen. Ins. Co.*, 793 N.W.2d 215, 221–23 (Iowa 2010). "Generally, 'a cause of action accrues when the aggrieved party has a right to institute and maintain a suit.'" *Skadburg v. Gately*, 911 N.W.2d 786, 793 (Iowa 2018) (citation omitted); *Sandbulte,* 343 N.W.2d at 462 ("Such a right exists when 'events have developed to a point where the injured party is entitled to a legal remedy.'" (citation omitted)).

"In the case of a contract dispute, . . . the limitations period begins running upon breach of the contract." *Shams*, 905 N.W.2d at 165.

The principal of "accrual" of a claim "is tempered by our discovery rule." *K & W Elec.*, *Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006).[2] "Where a statute of limitations uses the term 'accrued' with regard to when the statute begins to run, the discovery rule applies." *Vachon v. State*, 514 N.W.2d 442, 445 (Iowa 1994). "Under the discovery rule, commencement of the limitations period is delayed 'until the plaintiff knows or in the exercise of reasonable care should have known both the fact of the injury and its cause.'" *K & W Elec.*, 712 N.W.2d at 116 (citation omitted). "[O]nce a plaintiff learns information that would alert a reasonable person of the need to investigate, the plaintiff 'is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation.'" *Skadburg*, 911 N.W.2d at 794 (citation omitted).

To repeat, Denver Sunset was overcharged for its electric service from 1985 until 2014. Denver Sunset's board learned of the overcharges in 2016, and Denver Sunset filed its lawsuit the same year, well within the five-year statute of limitations set forth in section 614.1(4). The lawsuit was not time-barred, and the City concedes as much.

The real question is how far back Denver Sunset may reach to recover overcharges. As noted, the district court concluded, "Section 614.1(4) limits what

---

[2] In *Skadburg*, the court implied "accrual" and "discovery" are two separate and independent inquiries. *See* 911 N.W.2d at 792 ("*If* the cause of action accrued more than five years before Skadburg filed her petition at law, we must *then* address whether the discovery rule or the continuous-representation rule tolls the limitations period, or whether the doctrine of fraudulent concealment estops Gately from raising the statute of limitations as an affirmative defense." (emphasis added)).

[Denver Sunset] can recover to the overcharges it paid within five years of December 20, 2016, when it commenced this action." The City asserts this was the right result. In its view, "the district court properly premised the limitation period upon the contractual nature of the relationship consistent with the continuing-violations doctrine." Certain opinions premised on a continuing-violations theory contain language to support this conclusion. *See Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 233 (Iowa 2006) ("Of course, any recovery under this count would necessarily be limited to sums payable in the five-year period preceding [the filing of the counterclaim]."); *Hegg v. Hawkeye Tri-Cty. REC*, 512 N.W.2d 558, 559–60 (Iowa 1994) ("Recovery is limited to those actions accruing during the statutory period, in this case five years, preceding the inception of the current action for damages."); *Scott v. City of Sioux City*, 432 N.W.2d 144, 147 (Iowa 1988) (citing precedent supporting limitation of recovery to five-year period preceding action for recurring injuries where successive actions would lie).[3] But that language must be read in context.

In *Hallett*, defendants filed a counterclaim for unpaid rents and royalties on a piece of property. *See* 713 N.W.2d at 233. The plaintiff moved for summary judgment based on the limitations period set forth in section 614.1(4). *Id.* at 229. The supreme court concluded the plaintff "made no showing of undisputed facts establishing the alleged failure to pay rent and royalties occurred more than five

---

[3] Denver Sunset argues the City did not raise the "continuing violations" theory in the district court and, accordingly, may not seek affirmance on this claimed alternative ground. We disagree. The City cited and discussed the doctrine in its brief in support of its resistance to Denver Sunset's motion to reconsider the summary judgment ruling. The issue was raised in the district court.

years prior to suit being filed in 2003" and, accordingly, failed to establish the claim was time-barred. *Id.* at 233. As an aside, the court stated, "Of course, any recovery under this count would necessarily be limited to sums payable in the five-year period preceding" the filing of the counterclaim. *Id.* The aside made sense, because the defendants had knowledge at least seven years before the counterclaim was filed that the plaintiff was not paying them for materials removed from the property. It follows their recovery would be limited to the rents and royalties paid within five years of the lawsuit. Here, Denver Sunset had no knowledge of the overcharges until after the overcharges ended in 2014. It could not have sued to recover the overcharges until it knew of them. *See Chrischilles v. Griswold*, 150 N.W.2d 94, 100 (Iowa 1967) ("If an injured party is wholly unaware of the nature of his injury and the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights."), *superseded by statute* 1975 Iowa Acts ch. 239, § 26 (codified at Iowa Code section 614.1(9)).

*Hegg* is similarly unavailing. There, dairy farmers filed two lawsuits against their electric company. *Hegg*, 512 N.W.2d at 559. The first lawsuit alleged negligence arising from stray voltage that they claimed reduced their cows' milk production. *Id.* The lawsuit was dismissed for lack of prosecution. *Id.* The second lawsuit alleged the electric company failed to correct the problem, forcing the farmers to purchase an electric grounding system. *Id.* The second lawsuit was filed within five years of the purchase. *Id.* The district court dismissed the action on the ground that it was barred by the five-year statute of limitations set forth in section 614.1(4). *Id.* The supreme court reversed, concluding the limitations period ran as to the later action "at the date of . . . accrual, not from the date of the

first wrong in the series." *Id.* That accrual date, according to the Heggs, was "when they installed the" grounding machine. *Id.* The supreme court agreed. *Id.* The court stated, "where the wrongful act is continuous or repeated, so that separate and successive actions for damages arise, the statute of limitations runs as to these latter actions at the date of their accrual, not from the date of the first wrong in the series." *Id.* It is in this context that the court limited recovery "to those actions accruing during the statutory period, in this case five years, preceding the inception of the current action for damages." *Id.*[4] Here, in contrast, Dever Sunset did not discover the overcharges until almost twenty-nine years after they began. In the absence of knowledge, the care facility could not have filed successive lawsuits to recover all the accrued overcharges.

*Scott* also refers to continuing or successive violations. 432 N.W.2d at 147–48. There, the plaintiffs sought to recover damages incurred within ten years preceding the filing of their action. *Id.* The court concluded the five-year limitations period set forth in section 614.1(4) applied and the limitations period began to run when the plaintiffs filed the first of three lawsuits. *Id.* at 148. The court reasoned,

---

[4] The Iowa Supreme Court discussed the continuing-violations theory in a different context in *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 46 (Iowa 2018). There, the court stated, "The doctrine applies when no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable." *Id.* (internal quotation marks and citation omitted). The court found it unnecessary to decide whether Iowa has "in fact adopted the continuing-violations theory." *Id.*; *cf. Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 571–72 (Iowa 2015) (stating "we aligned ourselves with the unanimous view of the Supreme Court in [*Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114–18 (2002),] that the continuing violation doctrine does not apply to cases involving discrete discriminatory acts, as opposed to hostile work environment claims" and stating "conduct that is not separately actionable but may become actionable based upon its 'cumulative impact' may be pursued on a continuing violation theory if some of the conduct occurred within the limitations period").

"They obviously believed that they had sustained injury at that time." *Id.* Again, the plaintiff's knowledge was key. *See Bandstra*, 913 N.W.2d at 44 ("Under the discovery rule, a victim's claim will begin to accrue once she is aware of the existence of a problem, even if she does not yet have a full understanding of the abuse's ultimate effects" and noting "adult victims [of sexual abuse] are . . . aided by application of the discovery rule if they can adduce sufficient evidence that they discovered the illegality within two years of filing suit, even if the abuse took place long before." (internal quotation marks and citation omitted)).

The City does not address Denver Sunset's lack of knowledge of the continuing violations. That fact renders the cited opinions inapposite and undermines the City's argument that Denver Sunset's recovery was limited "to those damages that occurred as a result of [the City] collecting overcharges on each separate monthly invoice issued within five years prior to Sunset's filing of its petition."

The City also (1) cites its "utility refund regulation" and (2) argues unjust enrichment is unavailable to Denver Sunset because it failed to establish an element of the cause of action. We turn to these arguments.

The City's reliance on its "utility refund regulation" is hindered by the absence of a record on the pertininent municipal ordinance. *See State v. Scheffert*, 910 N.W.2d 577, 583–84 (Iowa 2018) ("Iowa Code section 622.62 is a statutory rule of evidence governing the admissibility of an ordinance at trial."); *City of Cedar Rapids v. Cach*, 299 N.W.2d 656, 658 (Iowa 1980) ("The general rule is that a court of general jurisdiction will not take judicial notice of a city ordinance. Under this rule, the ordinance must be pled and proved."). The ordinance purportedly

conferring authority upon the City to collect debts and issue refunds as it saw fit was neither cited nor admitted in the district court. The City simply introduced "resolutions" containing the following sentence: "The electric utility is regulated by the Iowa Utilities Board." The resolutions, in turn, did not cite or quote the Iowa Utilities Board regulation upon which the City now relies. *See generally* Iowa Code § 384.84(1) ("The governing body of a city utility . . . may establish, impose, adjust, and provide for the collection of rates and charges to produce gross revenues at least sufficient to pay the expenses of operation and maintenance of the city utility . . . . Rates must be established by ordinance of the council or by resolution of the trustees, published in the same manner as an ordinance.").

In any event, the IUB regulation cited by the City does not limit Denver Sunset's recovery to "five years," as the City contends. The regulation states, "The time period for which the utility is required to adjust, refund, or credit the customer's bill shall not exceed five years *unless otherwise ordered by the board*." *See* Iowa Admin. Code r. 199-20.4(14)(e). The regulation permits the board to order a refund for a period greater than five years.

We are left with the City's argument that unjust enrichment is unavailable because Denver Sunset failed to establish an element of the cause of action. The City premised its summary judgment motion on a statute-of-limitations defense and on the applicability of the utility regulation. The question of whether Denver Sunset stated a cause of action for unjust enrichment was neither raised by the City nor addressed by the district court. Accordingly, we cannot affirm the district court's ruling on this alternate ground. *See DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002) ("We have in a number of cases upheld a district court ruling on a ground

other than the one upon which the district court granted relief *provided* the ground was urged in that court." (emphasis in original)); *Scott*, 432 N.W.2d at 147 ("A successful party may, without appealing or assigning errors, seek affirmance of a district court decision on any ground asserted before the district court, even if rejected therein.").

All that remains is an argument raised by the Iowa Association of Municipal Utilities in an amicus curie brief. Amicus contends "a contractual relationship [between the City and customer] is not supported by municipal law" and "the outcome of this case is properly governed by the City of Denver's local regulations and principles of municipal home rule." In its view, the district court "reached the 'right' result for the wrong reasons." It argues "under Denver's own ordinances, [Denver Sunset] is entitled to a refund of five years' worth of the overpayments." We are unpersuaded.

First, as discussed, amicus' argument that "municipal ordinances," rather than contract principles, "provide the correct remedy" is hindered by the absence of a record on the pertinent municipal ordinance.

Second, even if we were to consider the ordinances, amicus' contention that the City did not enter into an unwritten contract with Denver Sunset to provide electric service is contradicted by Denver Code of Ordinances section 14.04.060, which states:

> The rules, regulations and rates, herein provided for or that may at any time be adopted or provided for, *shall be considered a part of a contract* with every person, company or corporation who is or hereafter may be supplied with electric current through the system, and every such person, company or corporation by taking or using

> the electric light or power shall be considered to express his, their or its assent thereto and to be bound thereby.

(Emphasis added.) The City created a contractual relationship and is hard-pressed to argue otherwise.

Third, amicus did not establish that "the electric utility regulatory framework supplants ordinary contract law as a basis for determining the rights and duties of utilities and customers." "An ordinance is within a muncipality's home rule authority only if it is not inconsistent with a state statute." *City of Coralville v. Iowa Utils. Bd.*, 750 N.W.2d 523, 529 (Iowa 2008). Amicus cites Iowa Code chapter 476—the current statute governing utilities—as the statute containing the regulatory framework. But the City ordinance assertedly incorporating the state regulatory framework does not refer to Iowa Code chapter 476; it refers to the 1966 version of Iowa Code chapter 490A. There is no indication that the provisions contained in the 1966 version of that statute are the same as the provisions in chapter 476. Without knowing the contents of the regulatory framework on which amicus relies, we cannot assess "the importance of municipal home rule" as advocated by amicus.[5] *See* Iowa Code § 364.1 (granting home-rule powers).

Finally, as discussed, the Iowa Utilities Board regulation on which amicus relies for the proposition that "the Nursing Home is [limited] to a refund of five years' worth of the overpayments" is broader than that.

In sum, Denver Sunset could not have sued to recover the overcharges posted to its account more than five years before it filed its action because Denver

---

[5] The 1966 statute predated an amendment to the Iowa Constitution conferring limited legislative home rule powers upon municipal governments. *See Hensler v. City of Davenport*, 790 N.W.2d 569, 584 (Iowa 2010).

Sunset did not know of those overcharges until 2016. The discovery rule applied to toll the statute of limitations until Denver Sunset learned of the overcharges. *See Skadburg*, 911 N.W.2d at 793 n.3 (clarifying *Chrischilles*, 150 N.W.2d at 100, as follows: "The discovery rule does not reset or shift the accrual date but merely tolls the statute of limitations"); *Scott*, 432 N.W.2d at 147 ("As a general rule, no cause of action accrues under Iowa law until the wrongful act produces injury to the claimant."). Once Denver Sunset learned of the overcharges, Denver Sunset could sue within five years to recover all the overcharges. We reverse the summary judgment ruling to the extent the court declined to apply the discovery rule to toll the statute of limitations. Like the district court, we base our ruling on the statute of limitations alone, without reaching the merits of Denver Sunset's unjust-enrichment claim. We remand for further proceedings.

**REVERSED AND REMANDED.**